UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Tyrone Patrick, #233697, | ) C/A No. 5:14-cv-4367-BHH-KDW |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) REPORT AND RECOMMENDATION |
| vs. | ) |
| | ) |
| Warden, Perry Correctional Institution, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

Tyrone Patrick ("Petitioner"), a state prisoner, filed this pro se Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28

U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and

Recommendation ("Report") on Respondent's Motion for Summary Judgment and Return. ECF

Nos. 20, 21. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised

Petitioner of the summary judgment and dismissal procedures and the possible consequences if

he failed to respond adequately to Respondent's Motion. ECF No. 22. Petitioner filed a

Response in opposition to Respondent's Motion. ECF No. 26. Respondent did not file a reply to

Petitioner's Response. Having carefully considered the parties' submissions and the record in

this case, the undersigned recommends that Respondent's Motion for Summary Judgment be

granted.

I.      Procedural History

Petitioner is currently incarcerated at Perry Correctional Institution, part of the South

Carolina Department of Corrections prison system. Pet. 1, ECF No. 1. On October 13, 2009, a

Pickens County Grand Jury indicted Petitioner on one count of trafficking cocaine base (crack

cocaine). App. 98-99.[1] Also on October 13, 2009, the Pickens County grand jury indicted Petitioner on one count of possession of cocaine base with intent to distribute one-half mile from a school, App. 100-01, and one count of possession of a weapon during the commission of a crime. App. 102-03. On April 13, 2011, a jury trial was begun before Honorable Judge G. Edward Welmaker ("the plea court") with the State of South Carolina represented by Assistant Solicitor Sam Tooker and Petitioner represented by Attorney Frank Eppes ("plea counsel"). App. 1. The jury was sworn in and the direct testimony of one witness was presented when plea counsel indicated to the plea court that Petitioner wished to enter an *Alford* plea to all three pending charges.[2] App. 3. Upon early questioning by the plea court, Petitioner said that he was only entering a plea because of his mother, App. 4, and at a later point, Petitioner asked the plea court whether "prior bad acts" and his "mere presence at the scene of a crime" would be enough to convict him. App. 6. At that point, Petitioner's attorney told the plea court that he had explained the law of constructive possession to Petitioner and had told him that it was a factual issue that the jury would have to decide. App. 7. The plea court also stated that the issue was for the jury to "decide . . . based on the full law that I give them." App. 8. Then, Petitioner spoke to his mother, who was at the hearing with him,[3] indicating that the jury would be instructed and then he would "have a chance, because this ain't right." *Id*. Petitioner thought that with the proper instruction the jury would not find him guilty of drug-related criminal offenses when the

---

[1] Citations to "App." refer to the appendix of the record that was before the PCR court. It is on the docket of this case at ECF No. 21-1.

[2] *See North Carolina v. Alford*, 400 U.S. 25 (1970) (permitting a court to accept a plea from a person who does not admit guilt of the charge to which he pleads, but does admit that the prosecution could likely prove the charge).

[3] When Petitioner first indicated to the plea court that he wanted to plead guilty to the charges he asked that his mother be allowed to stand with him. App. 3.

drugs were "claimed by another person." App. 8. After an approximately 30 minute break in the proceedings, Petitioner told the plea court that he wanted to enter a guilty plea. App. 9. Petitioner then answered "Yes, sir" to each of the plea court's questions about whether he wanted to give up the trial-related rights that the court had explained to him and that he was satisfied with his attorney's services. Petitioner also declined the plea court's offer of an opportunity to discuss anything further with counsel and answered the court's inquiry as to his understanding of the discussions he had with counsel, stating "I've understood everything, sir." App. 10. However, immediately thereafter Plaintiff spoke directly to his mother and told her that he was pleading, but that he wanted to ask the plea court a question about the sufficiency of some of the State's evidence. At that point, the plea court responded "Mr. Patrick, do you want to enter your plea or not." App. 10-11. Petitioner responded, "I'm pleading, I'm pleading, I'm pleading. I just wanted to ask you this." App. 11. The plea court responded that it did not want to force Petitioner to plead "in anyway," but reminded him that there was "a jury waiting" if he wanted to proceed with the trial. The plea court then asked Petitioner again if he understood the rights he was giving up by pleading guilty and Petitioner responded, "Yes, sir." App. 11. After hearing from the State and plea counsel that the guilty plea included a negotiated sentence of 20 years, the plea court asked Petitioner if he still wanted to enter an *Alford* plea, to which Petitioner responded "I'm entering this *plea of guilty*, sir, because it is led [sic] to me that if I'm found guilty that I will get way more time than this twenty-year offer." App. 12 (emphasis added). The plea court then explained to Petitioner that the court, not the prosecutor, would decide any sentence after a jury verdict and then explained the potential maximum sentences for each charge and asked Petitioner if he understood. Petitioner responded, "Yes, sir." App. 13. The plea court then asked Petitioner if he had been truthful and whether he understood each of the three charges to which he was pleading. Petitioner responded that he had been truthful and understood the

charges. App. 14-15. Petitioner then testified before the plea court about his difficult background and his desire to have a chance for a better existence. He also directly asked the plea court if, having heard everything about his background, it would have given him "another chance." App. 21. The court responded that it could not answer that question, but encouraged him to make good of his time in prison by mentoring younger prisoners and undertaking drug rehabilitation, which the judge said he would recommend. App. 22. Petitioner again questioned whether his "mere presence of [sic] a house" was worth 20 years, again speaking directly to his mother as well as to the court. App. 23. After hearing from the State and plea counsel that some other undisclosed charges then-pending against Petitioner were going to be dropped in connection with the plea, the plea court imposed a 20-year sentence on the trafficking charge, and five-year concurrent sentences on the remaining two charges. App. 23-24.

Petitioner, through plea counsel, filed a timely direct appeal from the guilty plea and sentences. ECF No. 21-2; *State v. Patrick*, No. 2011190628 (S.C. Ct. App.). In compliance with South Carolina Rules of Appellate Procedure ("SCRAP") Rule 203(d)(1)(B)(iv), plea counsel included on the notice of appeal a statement informing the court that he did "not believe there [were] any issues which can be reviewed on appeal." ECF No. 21-2. On May 6, 2011, plea counsel wrote a letter to Petitioner informing him that he had "twenty (20) days from the date on this letter to inform the South Carolina Court of Appeals in writing of any arguable basis that there are issues preserved for appeal." ECF No. 21-4. On May 19, 2011, Petitioner filed a five-five-page letter to the Court of Appeals, raising the following issues (restated): 1) the affidavit for the search warrant did not support a finding of probable cause because the confidential informant was unreliable and the affidavit contained false information; 2) plea counsel was ineffective for failing to subpoena a witness who could have exonerated Petitioner by saying that the drugs found during the search were not his, by failing to raise issues before trial that

Petitioner wanted raised, and by "tricking" Petitioner into pleading guilty by saying he could raise these issues on appeal but then not raising them; 3) the plea court committed prejudicial error by refusing to release the confidential informant's statements before trial; 4) the trial court committed prejudicial error by admitting evidence of irrelevant prior bad acts; 5) the trial court should have suppressed eyewitness identification testimony; 6) whether mere presence in a house where drugs were found was sufficient evidence to convict; 7) whether guns seized, but not listed on a search warrant, should have been suppressed, and 8) whether the entire search should have been found illegal because law enforcement did not knock on the door to announce their presence before knocking it down.

Although he included legal argument regarding some issues, with the exception of the second issue (ineffective assistance of counsel) [4] and the third issue relating to the statement of the confidential informant,[5] Petitioner did not specifically discuss any efforts that were made by

---

[4] Claims of ineffective assistance of trial counsel are not properly raised in direct appeals in South Carolina and the direct-appeal appellate court will not consider such claims. *State v. Felder*, 351 S.E.2d 852, 852 (S.C. 1986); *State v. Carpenter*, 286 S.E.2d 384, 384 (S.C. 1982).

[5] Regarding this issue, Petitioner argued that he filed pro se motions in the trial court in order to preserve the point for review. ECF No. 21-5 at 2. However, it is settled that where a criminal defendant is represented by legal counsel, South Carolina trial courts will not consider motions or other pleadings submitted pro se and they are considered to be without legal effect. *Foster v. State*, 379 S.E.2d 907 (S.C. 1989) (no right to hybrid representation in South Carolina); *State v. Stuckey*, 508 S.E.2d 564, 565 (S.C. 1998) (same). Thus, despite Petitioner's obvious efforts to place certain issues before the plea court before his trial commenced as shown in many of the documents that Petitioner attached to both the Petition, ECF Nos. 1-2, 1-9, 1-10, 1-11, 1-12, 1-13, and his Response to the Motion for Summary Judgment, ECF No. 26-4, his many pro se submissions violated established South Carolina law and were not properly before or considered by the plea court. Petitioner's own supporting documents show that he was warned by the Pickens County Clerk of Court that the plea court could "only communicate with [him] in a court room with a court reporter and opposing council [sic] present." ECF No. 1-9 at 25. Many of the supporting documents show that Petitioner was clearly warned by Pickens County court officials and employees when he submitted pro se-prepared documents and motions to the court that he should "[t]alk to [his] attorney" or correspond with him to obtain requested information and that "all motions have to come from [his] attorney." ECF Nos. 1-10 at 20, 42; 1-11 at 1, 26, 27, 32, 41; 1-12 at 15, 50; 1-13 at 20.

himself or plea counsel to preserve each of the issues in the plea court. However, he concluded his pro se brief by stating that he only pleaded guilty because he did not have his witnesses and he was told he could raise the issue of the unreliability of the confidential informant and reasonableness of the search on appeal. He also informed the court that he could not present his whole argument in his letter because he could not go to the law library at his place of incarceration. ECF No. 21-5. On June 3, 2011, the South Carolina Court of Appeals dismissed the direct appeal, holding that Petitioner had not shown that the issues he attempted to raise had been "raised to or ruled upon by the circuit court judge" and his counsel had asserted no "issues that can be reviewed on appeal." ECF No. 21-6; *see supra* notes 4 and 5. The remittitur was sent to the Pickens County Clerk of Court on June 21, 2011. ECF No. 21-7. Petitioner filed a post-post-conviction relief ("PCR") application on January 20, 2012, ECF No. 21-8, raising the following grounds for relief (summarized and restated) in a 184-page application:

(a) ineffective assistance of counsel for failing to object to an improper jury instruction and to the plea court's failure to "fully inform Applicant of mere presence";

(b) ineffective assistance of counsel for failing to object to the plea court's coercive plea colloquy including "browbeating of Applicant with incomplete sentencing declarations" and coercive statements about harsher sentences designed to "instill fear" in Applicant and force an involuntary guilty plea;

(c) ineffective assistance of counsel for failing to subpoena witnesses to support Applicant's version of the facts relating to the arrest and search and seizure of evidence;

(d) ineffective assistance of counsel for failing to move for a continuance and preserve the issue for appeal;

(e) ineffective assistance of counsel for failing to effectively cross examine a critical state witness regarding the issue of consent for the search;

(f) ineffective assistance of counsel for failing to adequately investigate the case against Applicant and to preserve for appellate review the issue of the legality of the search and seizure;

(g) ineffective assistance of counsel for failing to request a specific jury instruction on reasonable doubt as applied to consideration of lesser-included offenses;

(h) ineffective assistance of counsel for failing to object to pretrial identification of Applicant and use of that identification to support the search warrant affidavit;

(i) ineffective assistance of counsel for failing to adequately cross examine the State's witnesses about the credibility of the information and evidence used to secure the search warrant;

(j) the trial court committed error by allowing use of hearsay testimony and character attack evidence from a law enforcement officer witness;

(k) ineffective assistance of counsel for failing to object to improperly admitted hearsay and character attack evidence and failing to preserve the issue for appeal;

(l) ineffective assistance of counsel for failing to object to the court's admission of statements that were improper under the Rules of Evidence;

(m) ineffective assistance of counsel for failing to file a motion to compel discovery from the State and preserve the issue of the State's failure to provide discovery for appeal;

(n) ineffective assistance of counsel for failing to provide competent and diligent representation at all stages of the criminal process;

(o) ineffective assistance of counsel as a result of the cumulative failure to provide competent and thorough representation and understand the currently applicable law;

(p) ineffective assistance of counsel for failing to challenge subject matter jurisdiction for prior convictions used against Applicant in the plea proceeding;

(q) ineffective assistance of counsel for failing to perfect a direct appeal on Applicant's behalf;

(r) ineffective assistance of counsel for failing to raise and argue an entrapment defense against the charges against Applicant.

ECF No. 21-8 at 8-13; App. 26-32 (the seven-page completed application form in the appendix

does not include the additional 177 self-prepared pages including a listing of grounds/argument

and many supporting documents that were attached to the application form); *Patrick v. State*, No. 2012-CP-39-0081. After the State filed its Return to the PCR application, App. 33-39, an evidentiary hearing was held October 21, 2013 in Pickens, South Carolina before the Honorable Judge Edward W. Miller ("the PCR court"). Attorney R. Mills Ariail, Jr. ("PCR counsel") represented Petitioner and Assistant Attorney General Karen C. Ratigan represented the State at the hearing. App. 40-41. Petitioner and plea counsel testified at the hearing. App. 46-83.

Petitioner testified that he had always wanted to go to trial because he did not believe that his "mere presence" in the house where drugs were found was sufficient to support convictions on the charges that were pending against him. App. 49-50, 65. He testified that he conveyed that desire to plea counsel from the time counsel was retained, App. 49, but that, as the time for trial approached, he felt coerced to enter an *Alford* plea because of plea counsel's poor performance in obtaining favorable witnesses, challenging the validity of the search warrant that authorized the search and seizure that resulted in Petitioner's arrest on the Pickens County drug and firearm charges, and his inadequate explanation of the applicable law. App. 58-59, 63-64, 65. Petitioner testified that he gave plea counsel contact information for Stephaney Foster, the person who was also arrested as a result of the search and seizure at the residence where Petitioner was located. Petitioner alleged that he encouraged plea counsel from the beginning of his representation to contact Ms. Foster and "corroborate" her written statement that had been taken by an attorney who represented him before he retained plea counsel ("the Foster statement"). App. 48-50.[6] According to Petitioner, the Foster statement would have demonstrated that he had nothing to do

---

[6] The history of Petitioner's legal representation before plea counsel was retained is somewhat hazy from this record. However, the supporting documents submitted by Petitioner along with the Petition show that Petitioner relieved at least one other attorney who had been "appointed" and was then appointed a different attorney before plea counsel was retained. ECF No. 1-6 at 25. That attorney is not the attorney who allegedly took the Foster statement.

with the crimes for which he was charged. App. 48, 51. He testified that the first attorney

presented the statement at his bond-reduction hearing and that plea counsel "tried to introduce

the statement" at his trial, but was unsuccessful because he did not "corroborate" the statement

or make a successful legal argument to support its admission. App. 52-53. Petitioner testified

that he believed that the statement showed that he had "no knowledge of the drug bein' in the

house" and that was "the stance [he] took . . . from day one." App. 53.[7] At that same point in his

PCR testimony, Petitioner stated that he had personal possession of the Foster statement, but that

he felt that he needed a transcript of the aborted trial proceeding—which the PCR court had not

ordered the State to produce when requested to do so by way of a motion from PCR counsel at

the beginning of the hearing[8] —where it was allegedly discussed in connection with pretrial

---

[7] Although the exhibit list for the transcript of the PCR hearing, App. 42, and the
transcript of Petitioner's testimony at the hearing, App. 55, indicates that the Foster statement
was made an exhibit at the PCR hearing, it is not attached to the PCR hearing transcript for this
court to review. The State objected to its introduction into evidence on "authenticity" and
"hearsay" grounds, App. 55, and, after Petitioner attempted to interpose a reply, PCR counsel
told the court that he had "not been able to find Ms. Foster . . . she's not here in regards to it."
After some further incomplete statements from Petitioner, the PCR court stated "we'll let it in for
what it's worth." App. 56. Petitioner included a copy of the Foster statement in his supporting
documents for the Petition. The statement reads as follows verbatim:

> I Stephaney Foster am writting [sic] this statement because 2009 the police came
> into my home at 100 Harlem Street with a search warrent [sic] and durring [sic]
> that search warrent [sic] they found drugs and guns in my home. After the search
> warrent [sic] I Stephaney Nichole Foster and Tyrone Patrick were arrested and
> both charged for these things. I Stephaney Foster am writting [sic] this statement
> to make it known that what was found in my home (crack and Guns) were not
> tyrone patricks that He knew nothing about it. they belonged to me (Stephaney
> Foster). And that Tyrone Patrick does not and has never lived at 100 Harlem
> Street.

ECF No. 1-10 at 18. The next supporting document in Petitioner's submission shows that the
Foster statement was sent to Petitioner by Assistant Public Defendant Teal Johnson under cover
of a letter dated March 6, 2013. It appears that Petitioner had requested the statement from the
attorney. *Id*. at 19.

[8] Petitioner's supporting documents show that Petitioner was informed by letter dated

motions "to show why this statement is relevant and how it's exoneratin' evident [sic]." App. 54. Petitioner testified that plea counsel did not take steps to locate Ms. Foster even though he had asked him to do so throughout the two years that he was detained on the charges, and that plea counsel did not take appropriate steps to obtain any evidence that would support Petitioner's version of the facts and interpretation of the law. App. 62, 66-67. At one point in his testimony, the transcript appears to indicate that Petitioner directly addressed his own PCR counsel about the absence of supporting evidence at the hearing and stated, "it takes evidence to prove it . . . and I told you the reason why you need to subpoena the transcript, I told you the reason why you need to subpoena the witness and [Petitioner's former attorney] so this wouldn't occur . . . ." App. 62. When PCR counsel responded that he had asked for an address for Ms. Foster, but that Petitioner had not been able to get one, Petitioner said that he had given PCR counsel an address for Ms. Foster's mother and another female and that he had talked to counsel "for about ten minutes." Petitioner noted that he was attempting to demonstrate that a PCR hearing is a burden

---

May 7, 2012, that he would need to contact the court reporter and purchase a transcript if he wanted one. ECF No. 1-9 at 42. The supporting documents also show that Petitioner apparently contacted the plea court's court reporter at some time prior to June 10, 2013 to inquire about the cost and procedure for obtaining a transcript of the trial proceedings that took place before the plea hearing. He was quoted a price of $1023.75 for an estimated 315 pages of transcript. ECF No. 1-9 at 27. At the beginning of the PCR hearing, the PCR court rejected PCR counsel's oral motion that the State to produce a transcript of the aborted trial proceedings for the PCR record. App. 44. Although there is no explicit ruling on the motion, it was not granted apparently based on the PCR court's acceptance of the State's response to the motion in which counsel indicated a policy to "never order the transcript if it results in a guilty plea if the trial has begun because obviously the plea is dispositive of all issues." The State's counsel also argued that the transcript of plea hearing was "extremely thorough" and that "the State doesn't really see the benefit in having the trial transcript." App. 45. Petitioner then personally addressed the PCR court, arguing that the trial transcript was relevant to provide support for his claims that he would have never pleaded guilty to the charges had it not been for plea counsel's ineffectiveness and coercion. App. 45-46. The PCR court's only response on the topic was "[w]ell, I tell you what, is he gonna testify?" To which PCR counsel responded affirmatively. The PCR court then, without any specific ruling on the motion, said "[w]ell let's get goin'." App. 46. No further discussion of the trial transcript by the PCR court, PCR counsel or the State's counsel appears in the PCR hearing transcript.

of proof hearing and it was "futile" without the evidence. App. 62. At that point, the PCR court told Petitioner that he should testify about "facts" and should not be making "legal arguments" in his PCR testimony. App. 63. Petitioner then testified that plea counsel did not go over the discovery with him or discuss any potential defenses or any legal basis on which to challenge the search and seizure that resulted in his arrest. Petitioner said that he believed that plea counsel used outdated law and argument in the motion to suppress that he filed and argued on Petitioner's behalf which prevented him from convincing the plea court to suppress the evidence that was seized under a warrant unsupported by probable cause. App. 64-65. Once again, Petitioner complained about not having the transcript of the aborted trial proceedings "to demonstrate" that plea counsel told the plea court that Petitioner would plead if the Foster statement was not admitted into evidence. App. 65-66. Petitioner also testified that he felt that he was pressured to enter a plea by the coercive nature of his discussions with plea counsel about the attitude that Pickens County authorities had about his case and because of discussions with both plea counsel and the plea court about potential maximum sentences he faced if convicted by a jury. App. 51, 57-59, 63. Petitioner also testified that he felt coerced to enter his plea by "them utilizin' [his] family, friends overbearin' [his] will . . . .," App. 59, and by being taken "to the back of the courtroom" where he was told that if he did not take the plea offer of a 20-year sentence, he would get a 50-year sentence and "never be able to see [his] mother . . . . ." App. 66. Petitioner once again testified that he decided to plead guilty "[a]fter a little bit more . . . family and friends and . . . counsel cohercin' [him] to plead guilty," but he said that the plea was not voluntary, intelligent, and knowing because he "never wanted to plead to charges [he was] innocent of." App. 66. PCR counsel then noted that Petitioner's PCR application was "pretty thick and . . . includes all the other information you need discussed, correct?" To which

Petitioner responded, "[e]verything I raised in my PCR application is why I'm here today." App. 67.

On cross examination by the State's attorney, Petitioner said that he met with plea counsel three or four times and, while he did not go over discovery with counsel, he did go over his version of the facts leading to his arrest and told counsel that he was innocent and wanted a trial. App. 68. Petitioner denied that plea counsel had discussed the legal concept of "constructive possession" with him before trial or the elements of the crimes with which he was charged. App. 69. He stated that he felt coerced and had obtained "erroneous advice . . .[and] overwhelming pressure and participation of the trial judge," App. 69-70, but he acknowledged that he told the plea court that he was telling the truth and that plea counsel discussed the concept of an *Alford* plea with him before he entered the plea. When asked if plea counsel told him that the plea offer was for a "negotiated 20-year sentence," Petitioner responded that he and his "family and everybody that was in there" were told that he would "get 20 years to 50 years . . . ." He explained that plea counsel told him he would get 20 years if he pleaded or 50 years if he went to trial and was convicted. App. 70-71. At that point in the hearing, the State concluded its examination, but Petitioner began to directly address the plea court, telling it that he also wanted to discuss an issue raised in his PCR application about the plea court not informing him of the "minimum criteria" that he was facing, but PCR counsel then interjected, "[n]othin' further, Your Honor." App. 71-72.

Plea counsel then took the stand and testified on questioning by the State's counsel that he was retained to represent Petitioner and that he filed "the usual Brady and Rule 5 motions" in Petitioner's case. He said that he discussed the discovery material with Petitioner, but that he was "not sure" that he had taken the materials he received for Petitioner to review because that involved a "unique situation" wherein a confidential informant was used and he had to "engage

in pretty extensive negotiations with the solicitor's office to get access to the tapes of the confidential informant." He indicated that two "significant" drug-sale cases were also pending against Petitioner at the time and that those cases were involved in his negotiations with the Solicitor's Office over its "policy of not providing tapes to defendants . . . ." App. 73. Plea counsel testified that the tapes involved drug purchases that the confidential informant had made from Petitioner and that the two drug-sale charges were also pending against Petitioner were dismissed as part of the negotiated plea. App. 74. Plea counsel testified that Petitioner told him his version of the facts and they spoke about the Foster statement, however, he did not remember if he was ever able to talk to Ms. Foster. Plea counsel testified that he looked for her for the trial, but could not find her and, therefore, could not subpoena her to attend the trial. He said he told Petitioner about being unable to locate Ms. Foster. App. 75. When asked if he explained the "legal concepts of mere presence and constructive possession" to Petitioner, plea counsel indicated that he might not have used those exact terms in his explanation, but affirmed that he did explain that the police would testify that Petitioner lived at the house and that "therefore he could be found guilty of possessing the drugs . . . ." App. 75-76. Plea counsel testified that Petitioner always wanted to go to trial and "felt like he'd prevail at trial." When asked about why he did not call the attorney who took Ms. Foster's statement to "corroborate" the statement in an attempt to admit it at trial, plea counsel said that he thought that any testimony that attorney could offer would be "hearsay" although, when asked by the PCR court whether he would have needed permission from the attorney to speak to Ms. Foster, he expressed uncertainty over whether the attorney who took the statement was Ms. Foster's attorney. App. 76-77, 79. Petitioner attempted to speak at that point, but was told to "be quiet" by the PCR court and was instructed not to talk by the bailiff. App. 77. Plea counsel testified that a "suppression hearing" was held, but he described it as a hearing on "everything in the kitchen sink" because he was

attempting to get the trial judge to address "several issues that [Petitioner] was concerned about" even though some were not "straight suppression issues." He testified that the motion to suppress was denied, and indicated that he did not remember telling the trial judge that Petitioner would plead if the motion was denied as Petitioner had testified. App. 77-78. Plea counsel testified that he had discussions with Petitioner and his mother and that Petitioner "changed his mind and decided to enter a guilty plea." He testified that he explained to Petitioner what "entering an *Alford* plea would mean" and that he explained to him "what a negotiated sentence would be." App. 78. Upon questioning by Petitioner's PCR counsel, plea counsel testified that he called phone numbers that Petitioner gave him to try to locate Ms. Foster, but he did not remember whether or not he had an address for her. He said that he was never able to get in touch with her. App. 79-80. Plea counsel expressly stated that he was "not as impressed with the statement as [Petitioner] was" because he felt that the police would discredit it and that, while "helpful," it would not "be dispositive." Plea counsel testified that he told Petitioner about his misgivings about the importance of the Foster statement. App. 80. Plea counsel testified that Petitioner's testimony about their discussions regarding whether to plead or complete the trial were "very accurate and very likely word-for-word accurate . . . ." App. 81. He testified that he was "straightforward" with Petitioner about his belief that the State was not "going to change their minds about [him]" and that they were not going to offer him any other sentence than the one negotiated through the plea. Plea counsel also testified that he believed he "fully discussed" the legal issues involving "constructive possession" with Petitioner and that he thought he had answered all of Petitioner's questions and that Petitioner understood what he was pleading to. App. 81. When asked if he considered that the theory of the case was whether contents of the Foster statement would be sufficient to exonerate Petitioner, plea counsel stated that he was more concerned about "the sales" and that after listening to the confidential informant tapes he

believed it "was gonna be the police officer's testimony versus [Petitioner's] and [he] just felt like we'd lose." Plea counsel stated that he did not know of anything else he could have done to get a different result in Petitioner's case. App. 82. In response to questioning by the PCR court, plea counsel acknowledged that Petitioner's mother was "involved in the decision to plea," and that the plea court "did everything he could to talk [Petitioner] into backin' out [of the plea]." App. 83. The PCR court summarized a portion of the plea hearing transcript wherein the plea court asked Petitioner whether or not he wanted to enter the plea after Petitioner seemed to hesitate. The PCR judge asked plea counsel whether he coerced or forced Petitioner to plead "in any way" and plea counsel said that he did not. App. 83.

After the PCR court read a portion of the plea hearing transcript wherein the plea court described the aborted trial process that had preceded Petitioner's decision to plead, both counsel rested their cases, but Petitioner then indicated a desire to address the court about the "exhaustion doctrine of 2254 . . . ." App. 84. Petitioner argued that he had not been permitted to "fully elaborate claims that [he] raise[d] in [his] PCR application," and expressed concern that, as a result, the State would argue that he "waived or abandoned" all of the claims that were not "raised" in the PCR proceeding. App. 84. Petitioner also told the PCR court that he had only talked to his PCR counsel "for ten minutes on the telephone" and indicated that he was still concerned that he was unable to "elaborate" his claims because "y'all stopped me." App. 85. In response, the PCR court stated that it had only stopped Petitioner from "making legal arguments" instead of testifying to "facts." Thereupon, Petitioner attempted to summarize several of his "issues" stating that they were "involuntary guilty plea" and "advice of counsel" and "participation of the trial judge . . . witness availability, gun is the firearm charge, discovery." App. 86. After both the PCR court and PCR counsel stated that Petitioner's PCR application was "part of the record," the PCR court announced its decision to deny Petitioner's

15

application and provided a brief summary of its rationale for doing so. App. 87. Following the hearing, the PCR court issued an order dated November 25, 2013, containing the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility. This Court weighed the testimony accordingly. Set forth below are relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

### Ineffective Assistance of Counsel/Involuntary Guilty Plea

The Applicant alleges his guilty plea was involuntary and that he received ineffective assistance of counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence." Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002).

For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. See Strick1and v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); Porter v. State, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006). When there has been a guilty plea, the applicant must prove that counsel's representation was below the standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370 (1985); Roscoe v. State, 343 S.C. 16, 20, 546 S.E.2d 417, 419 (2001).

To be knowing and voluntary, a plea must be entered with a full understanding of the charges and the consequences of the plea. Boykin v. Alabama, 395 U.S. 238, 243-44, 89 S. Ct. 1709, 1712 (1969); Dover v. State, 304 S.C. 433, 434, 405 S.E.2d 391, 392 (1991). When determining issues relating to guilty pleas, the court will consider the entire record, including the transcript of the guilty plea, and the evidence presented at the post-conviction relief hearing. Anderson v. State, 342 S.C. 54, 57, 535 S.E.2d 649, 657 (2000) (citing Harres v. Leeke, 282 S.C. 131, 318 S.E.2d 360 (1984)).

The Applicant stated he had three or four meetings with plea counsel. The Applicant stated that, while he told plea counsel he was innocent, they never reviewed the discovery materials. The Applicant stated he rejected a fifteen-year plea offer because he wanted a jury trial. The Applicant stated plea counsel failed

to "corroborate the statement" -- that Kraig Pringle took from co-defendant Stephanie Foster -- in order to show that he had no knowledge of the drugs. The Applicant stated plea counsel failed to investigate the case or subpoena witnesses (Pringle and Foster). The Applicant stated he "broke down" and decided to plead guilty because of coercion. The Applicant stated plea counsel explained the concepts of an <u>Alford</u> plea and a negotiated sentence.

Plea counsel testified he filed discovery motions after he was retained. Plea counsel testified he reviewed the discovery materials (except for some information about the confidential informant) with the Applicant. Plea counsel testified that Applicant told him that he was innocent and rejected a fifteen-year plea offer from the State. Plea counsel testified he did "corroborate" the statement at issue but that Pringle's testimony would be inadmissible hearsay. Plea counsel testified, however, that he was not impressed by Foster's statement. Plea counsel testified that, while the Applicant gave him contact information for Foster, he was never able to get in touch with her. Plea counsel testified that had a pre-trial suppression hearing and had begun the trial when the Applicant decided to plead guilty. Plea counsel testified the State would only offer a negotiated sentence and that he explained the nature of such (as well as what an Alford plea entailed) to the Applicant. Plea counsel testified he could not have done anything else to obtain a different result in this case.

Regarding the Applicant's claims of ineffective assistance of counsel, the Court finds the Applicant failed to meet his burden of proof. The Court finds the Applicant's testimony is not credible, while also finding plea counsel's testimony is credible. The Court further finds plea counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation.

This Court finds the Applicant failed to meet his burden of proving plea counsel should have corroborated the statement. The Applicant stated Kraig Pringle took a statement from his co-defendant, Stephanie Foster, and plea counsel could have corroborated this statement to show he had no knowledge of the drugs. Plea counsel testified Pringle's testimony would have been inadmissible hearsay. The Court finds the Applicant has failed to articulate what he wanted plea counsel to have done to "corroborate" the statement. Without such a showing, the Court cannot speculate as to whether any additional investigation into the statement would have yielded a different result in this case. <u>See</u> <u>Skeen v. State</u>, 325 S.C. 210, 481 S.E.2d 129 (1997) (holding applicant not entitled to relief where no evidence presented at PCR hearing to show how additional preparation would have any possible effect on the result at trial).

This Court finds the Applicant failed to meet his burden of proving plea counsel should have investigated and subpoenaed Pringle and Foster. Plea counsel indicated he had contact information for Foster but was never able to get in touch with her prior to the trial. This Court finds plea counsel's testimony is credible. Regardless, as neither Pringle nor Foster testified at the PCR hearing,

this Court cannot speculate as to any impact their testimony may have had upon the Applicant's case. See Bannister v. State, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (the South Carolina Supreme Court "has repeatedly held a PCR applicant <u>must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence</u> at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial.") (emphasis in original). Further, the Applicant has failed to articulate what plea counsel could have discovered if he had further investigated these two witnesses. See Davis v. State, 326 S.C. 283, 486 S.E.2d 747 (1997) (denying relief where applicant failed to present witnesses or specific testimony establishing he would have had a defense with additional time to prepare for trial).

This Court finds the Applicant failed to meet his burden of proving he was coerced into pleading guilty. The Applicant told the plea judge that he understood his questions and was satisfied with plea counsel's representation and had understood their discussions. (Plea transcript, p.10). While this Court notes the guilty plea did stop at one point, when the plea judge asked the Applicant if he wanted to wanted to [sic] plead guilty, the Applicant stated "I'm pleading, I'm pleading, I'm pleading." (Plea transcript, p.8; p.10). When the plea judge noted the jury was still waiting, the Applicant did not tell the judge that he wanted to resume the trial. (Plea transcript, p.10). This Court finds there is no evidence in the guilty plea transcript to support the Applicant's assertion that he was pressured into entering a guilty plea; therefore the transcript has refuted this allegation. See Stalk v. State, 375 S.C. 289, 300, 652 S.E.2d 402, 407 (Ct. App. 2007); see also Rayford v. State, 314 S.C. 46, 48-49, 443 S.E.2d 805, 806 (1994) (where transcript of guilty plea proceeding refuted applicant's claim that he did not understand the terms of a plea bargain, grant of PCR was inappropriate notwithstanding applicant's claim lawyer misadvised him). This Court finds the Applicant entered a knowing and voluntary guilty plea. See Boykin v. Alabama, 395 U.S. at 243-44, 89 S. Ct. at 1712.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test -- that plea counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that plea counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of Strickland -- that he was prejudiced by plea counsel's performance.

This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. This Court also concludes the Applicant has failed to meet his burden of proving his guilty plea was not knowing and voluntary. Frasier v. State, 351 S.C. at 389, 570 S.E.2d at 174.

## **All Other Allegations**

As to any and all allegations that were raised in the application or at the

18

hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any testimony, argument, or evidence at the hearing regarding such allegations. Accordingly, this Court finds the Applicant has abandoned any such allegations.

## **CONCLUSION**

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his guilty plea and sentencing proceedings. Counsel was not deficient in any manner and the Applicant was not prejudiced by counsel's representation. Furthermore, the Applicant's guilty plea was entered knowingly and voluntarily within the mandates of Boykin. Therefore, this PCR application must be denied and dismissed with prejudice.

App. 91-96 (footnote omitted pointing out that Petitioner's trial was halted after the direct examination of the first witness). A *Johnson* petition[9] for writ of certiorari seeking review of the PCR court's final judgment was submitted on Petitioner's behalf to the South Carolina Supreme Court on August 27, 2014. ECF No. 21-9; *Patrick v. State*, No. 2013-002701 (S.C.). Deputy Chief Appellate Defender Wanda H. Carter raised the following issue for the court's review quoted verbatim: "The PCR judge erred in ruling that petitioner's guilty pleas were given voluntarily in the case because petitioner protested his innocence, desired a jury trial, and was coerced into pleading guilty after his motion to suppress the drug evidence was denied as he believed there was no other choice but to plead guilty and avoid a fifty-year sentence." ECF No. 21-9 at 3. With authorization from the appellate court, Petitioner submitted a pro se supplemental brief containing 152 pages of issues and argument and an additional 54 pages of exhibits. ECF Nos. 21-11, 21-12. Petitioner raised the following eleven issues for review (summarized and restated):

A) The PCR court erred in ruling that plea counsel was not ineffective where

---

[9] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), addressing the procedures for counsel to follow when filing what they perceive to be meritless appeals in state PCR cases pursuant to *Anders v. California* and requesting to be relieved from representation.

counsel did not insure that the guilty plea was knowing and voluntary because neither plea counsel nor the plea court adequately explained the law regarding whether a person's mere presence at the scene of a crime was sufficient evidence of guilt so that Petitioner could understand.

B) The PCR court erred in ruling that Petitioner was not prejudiced and his constitutional rights were not violated by the plea court's participation and undue influence exerted during the plea proceedings.

C) The PCR court erred in ruling that Petitioner was not prejudiced by plea counsel's failure to subpoena witnesses to testify for Petitioner or to challenge the prosecution's assertion and the plea court's pretrial ruling that Petitioner's co-defendant's statement was inadmissible hearsay.

D) The PCR court erred in ruling that plea counsel was not ineffective for not staying "abreast of" case law and allowing Petitioner to plead guilty to an "unconstitutional charge of commission of a violent crime" where Petitioner was innocent.

E) The PCR court erred in ruling that Petitioner's constitutional rights were not violated by the use of an "unconstitutional" prior conviction to support probable cause for the search warrant affidavit; plea counsel was ineffective for failing to challenge the use of the prior conviction.

F) The PCR court erred in ruling that plea counsel was not ineffective for failing to file a discovery motion earlier in the pretrial process; Petitioner's rights were violated by the plea court's refusal to reveal the identity of the State's confidential informant.

G) The PCR court erred in ruling that plea counsel was not ineffective for failing to challenge the truthfulness of the search warrant affidavit and the facial validity of the warrant resulting in Petitioner's inability to confront his accusers.

H) The PCR court erred in ruling that Petitioner was not denied the right to counsel, the right to compulsory process where he was not allowed to subpoena favorable witnesses, or the right to confront his accusers at the preliminary hearing.

I) The PCR court erred in ruling that Petitioner was not denied his right to a speedy trial.

J) The lower court erred in ruling that Petitioner was not entitled to application of "the new law under the (F.S.A.)"; plea counsel was ineffective for failing to ask the plea court to apply that law to Petitioner's case.

K) The PCR court erred in ruling that plea counsel was not ineffective in connection with Petitioner's direct appeal where counsel failed to preserve

meritorious issues for review and asserted that no appealable issues existed, but did not move to withdraw from representation.

ECF No. 21-11 at 3-4. On October 23, 2014, the Supreme Court of South Carolina issued an order denying the petition for certiorari without analysis of any issue and relieving Petitioner's PCR appellate counsel from representation. ECF No. 21-12. The remittitur was issued on November 10, 2014. ECF No. 21-13.

II.    Discussion

    A.    Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

**Ground One**: Petitioner 5th, 6th, and 14th Amends was violated do [sic] to counsel misadvice to what constitute guilt of all charges, and coercing Petitioner into a invol, unitell, unknow [sic] guilty plea.

    . . . .

Petitioner never wanted to plead guilty, Petitioner was inocence [sic] of charges. Petitioner was giving misadvice on record on mere presence by counsel and the judge technical explaination [sic] did not cure counsel erroneous advice and did not give a complete understanding to Petitioner of what constituted guilt of all charges after Petitioner demonstrated confusing [sic] over how conduct constituted guilt of charges. See memorandum Petition attach/ and Rule 11 violation due to participation of the trial judge given the harsh sentencing guidelines without the minimum.

    . . . .

**Ground Two**: Petitioner 5th, 6th, and 14th Amendment was violated due to counsel failure to subpoena witness Stepheny Foster and corroborate the making of the statement in trial.

    . . . .

Petitioner made repeated demands before trial to counsel and the state to subpoena witness stressing each time how vitally important the testimony of the witnesses would be to the defense. (See exhibits supporting this claim and statement) Yet counsel failed to subpoena Stepheny N. Foster and any witnesses, and only subpoena Kraig Pringle the day of trial without interviewing him and

21

investigating the exonerating evidence statement from Stepheney Foster that showed Petitioner innocence, which aloud [sic] the State to suppress the evidence which caused a breakdown into the proceeding and forced the involuntary, unknowing, unintelligent guilty plea because Petitioner had no defense, and counsel and State threating [sic] a 50 year sentence. See Memorandum.

. . . .

**Ground Three**: Petitioner Due Process was violated under the 5th, 6th, and 14th Amends, due to ineffective assistance of counsel.

. . . .

Counsel was ineffective for failing to challenge and object and advising Petitioner to plead guilty to conviction which is unconstitutional under the "use" prong of statute prohibiting using or carying [sic] firearm during and in relation to a drug trafficking crime, which was not supported by evidence in the record under definition of "use" set forth in Supreme Court's Bailey opinion, and cannot be upheld under carry prong of that statute, or carrying prong and failing to raise this substantial issue on appeal. See Memorandum.

. . . .

**Ground Four**: Petitioner 5th, 6th, and 14th Amends was violated due to ineffective assistance of counsel by counsel failure to object to the illegal prior conviction.

. . . .

Cousel [sic] failed after repeated demands to object and challenge the unconstitutional prior conviction utilize to inhance [sic] Petitioner sentence and force Petitioner to plead guilty due to the harsh impact of the illegal conviction playing a role in the sentencing phase of trial if Petitioner would have proceeded to trial. The first prior conviction was committed when Petitioner was 16 in 1995 and Petitioner never had a waiver hearing from juvenile to adult court which is mandatory under Kent. See Memorandum.

ECF No. 1 at 5-10. According to Respondent, Petitioner submitted an "attachment" to his Petition that included ten additional Grounds for relief encompassing the four Grounds stated in the Petition, plus six additional Grounds. ECF No. 21 at 7-8. Rather than expend excessive court resources to verify the accuracy of Respondent's list,[10] in an effort to liberally construe

---

[10] Respondent appears to quote these ten Grounds and states that they were found in an

Petitioner's pro se pleadings to the extent possible and out of an abundance of caution, the undersigned quotes verbatim, with only minor non-substantive changes,[11] the ten Grounds for relief that Petitioner, himself, lists as being at issue in this case in the "Table of Contents" portion of his Response to the Motion for Summary, ECF No. 26-3:

> **Ground One**: Counsel was ineffective in failing to inform Petitioner of the full and correct information on mere presence, and giving incomplete erroneous advise [sic] on record on what constituted guilt and failing to fully inform and withdraw plea . . .after Petitioner's demonstrated innocence and confussion [sic] over what elements constitute guilt.

> **Ground Two**: Due Process was violated because Petitioner was not adequately advised on the mandatory minimum sentence had Petitioner decided to stand trial by court or counsel and the judge participation influencing the plea through coercion and duress with counsel.

> **Ground Three**: Due Process violated because counsel was completely ineffective for failing to subpoena witness with exonerating evidence and failing to corroborate [sic] the making and reliability of the statement, and failing to ask for

---

"attachment" to the Petition, but he does not specify in which attachment or attachments those specific Grounds are found and stated in the same way. ECF No. 21 at 6. It is possible that Respondent's counsel developed the list of Grounds by summarizing and paraphrasing from Petitioner's 500+ pages of factual and legal argument and supporting documents in this case, but that cannot be determined from the information provided in the vague citation to the record in the Return and Memorandum. Review of this court's docket discloses fourteen separate attachments to the Petition in this case. ECF Nos. 1-1 through 1-14. The lack of specific references to the actual locations of the apparently quoted additional Grounds within Petitioner's multiple lengthy and somewhat confusingly organized attachments has forced this court to expend excessive judicial resources in an attempt to verify the list of Grounds contained in Respondent's Memorandum. Attorneys appearing before this court should provide pinpoint citations to the specific location on this court's docket (including attachment number and page number within that attachment) where quoted material may be found. *See The Bluebook: A Uniform System of Citation* B17.1.2 (Columbia Law Review Ass'n et al., 20th ed. 2015).

[11] The only changes made by the undersigned to Petitioner's exact words are substitution of lower case letters with some initial capital letters for the all-capital letters that appear to have been used by Petitioner. It is noted that Petitioner's submissions to the court are excessively lengthy and confusingly organized. It is nearly impossible to determine where his factual statements about his own case stop and his recitation of factual scenarios and legal holdings from cited legal opinions begin. The undersigned has made diligent effort to sort out Petitioner's substantive claims and his factual allegations relating directly to his own case in this Report, but specifically notes that excessive submissions such as these unreasonably hinder judicial efficiency.

23

a continuance until witness appeared or was found.

**Ground Four**: Due Process violated because counsel was completely ineffective for breaching his duty as an advocate by improperly [sic] giving misadvice, and pressure on Petitioner through coercion, and misrepresenting material facts of law on mere presence, because constructive possession of firearm in codefendant residence does not support conviction for using or carrying a firearm during in relation to drug trafficking crime under § 924 (c)(1), <u>Baily v. U.S.</u>, 516 U.S. 137, 116 S. Ct. 501.

**Ground Five**: Due Process violated because counsel was clearly ineffective for failing to object and challenge the unconstitutional prior conviction utilize to inhance [sic] Petitioner present sentence and used to force the unknowinging [sic], unintelligent, involuntary guilty plea, because the unconstitutional conviction was used to threating [sic] Petitioner if Petitioner testified or if found guilty the prior conviction would be used to push for the maximum sentence.

**Ground Six**: Due Process violated because counsel was completely ineffecting [sic] for not objecting and challeging [sic] unconstitutional illegal evidence utilize to support probable cause which denied Petitioner a fundamental fair trial and caused Petitioner to lose faith in counsel due to his poor performance, and the State violating Due Process under <u>Brady</u> for withholding evidence that could have been challenge in the probable cause proceeding.

**Ground Seven**: Due Process violation because Petitioner was denied a fundamental fair process and procedure all throughout collateral proceeding due to ineffective assistance of counsel in direct appeal, (P.C.R.), and Appellate Review because all counsel failed to raise obvious and substantial claims raise in this brief.

**Ground Eight**: Due Process was violated because Petitioner was denied affective [sic] representation in a critical stage of the criminal process, because Petitioner was denied counsel, which denied Petitioner a fundamental fair trial at the preliminary hearing which denied Petitioner affective [sic] cross-examination, and the right to compulsory process to secure exonerating testimony when witness Stepheny N. Foster was detained in the detention center, which affected Petitioner trial proceeding because the witness was not available.

**Ground Nine**: Due Process violated because counsel was clearly ineffective for failing to file for a fast and speedy trial.

**Ground Ten**: Due Process violated due to ineffective assistance of counsel by counsel failure to investigate a new rule of law that has been made retroactive under the Constitution.

ECF No. 26-3 at 2-5.

B.    Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.    Habeas Corpus Standard of Review

25

1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

a.     Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id*.; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th

Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing

evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.    Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 563 U.S. at 190.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 179. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* at 180. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 563 U.S. at 181. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that

28

prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." *Id*. at 182 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id*. (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." 562 U.S. at 101.

2.      Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.      Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing a PCR application. State law requires that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the

applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

31

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *Teague v. Lane*, 489 U.S. 288, 297-98 (1989), *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996), and *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an

affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome a respondent's contention, it is a petitioner's burden to raise cause and prejudice or actual innocence. If not raised by the petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

c.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. Pursuant to *Martinez v. Ryan*, an error by a prisoner's post-conviction counsel during his initial state collateral review proceeding can qualify as "cause" to excuse the procedural default of a claim of trial counsel ineffectiveness claim if: (1) state law required the prisoner to wait until post-conviction review to raise *Strickland* claims; (2) the prisoner's underlying *Strickland* claim is "substantial"; and (3) the prisoner can establish that his post-conviction counsel was ineffective under the *Strickland* standard. 132 S.Ct. 1309, 1318–

33

1318–19 (2012).

3.    Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and prejudice in his ineffective-assistance-of-counsel claim. *Id.*

III.    Analysis

A.    Request for Evidentiary Hearing

Petitioner asks this court to grant him an evidentiary hearing in this case, claiming that it is needed to "flush out the material facts in dispute because [he] was denied a fundamental fair proceeding and opportunity in the lower court proceeding due to ineffective assistance of counsel." ECF No. 26-3 at 9-10. He points primarily to his inability to obtain and present to the PCR court a transcript of the trial proceedings that were conducted before he decided to enter an *Alford* plea to the pending charges and asserts that it was "fundamentally unfair" for the PCR court to refuse his request for a State-paid transcript and then reject some of his claims for lack of supporting proof. *Id.*

The decision to grant an evidentiary hearing is "generally left to the sound discretion of district courts." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Cullen v. Pinholster*, 563 U.S. at 181 ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). The court must consider whether an evidentiary hearing would afford the petitioner the opportunity "to prove the petition's factual allegations, which, if true, would entitle [him] to federal habeas relief." *Schriro*, 550 U.S. at 474. "[T]he deferential standards prescribed by § 2254 control whether to

34

grant habeas relief, [and] a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id.*; *see* 28 U.S.C. § 2254(e)(2) (stating that a district court "shall not hold an evidentiary hearing" unless the habeas petitioner shows (1) his claim rests upon a new rule of constitutional law or on a factual basis that could not have been previously discovered through due diligence; and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the [petitioner] guilty of the underlying offense").

Having closely reviewed the record in this case, the undersigned rejects Petitioner's assertions that he was denied a fundamentally fair opportunity to prove his claims in state court. The State's attorney told the PCR court that the State had not requested the court reporter to create a transcript because it maintained the position that guilty pleas waived any error in the state criminal proceedings that occurred before the pleas were entered. App. 5-6. Also, there is no showing that any state court or officer did anything to prevent either Petitioner's retained counsel or his appointed PCR counsel from taking the required steps to order a transcript from the court reporter or to prevent Petitioner's counsel from presenting any witness or defense for Petitioner. Additionally, Petitioner was able to submit pro se arguments in his direct appeal and his PCR appeal and he was never prevented from presenting any claims or evidentiary support in those proceedings. Even though his counsel did not do everything that Petitioner asked them to do does not mean that they provided ineffective legal representation or that he was denied a full and fair opportunity to present any of his claims for consideration by the state courts. The undersigned concludes that the record now before this court is adequate to permit a full review of each of the Grounds that Petitioner raises here. Accordingly, no evidentiary hearing is required in this case and Petitioner's request for one is denied.

B.    Procedurally Barred Claims

Respondent contends that Petitioner's Grounds One, Four, Five, Six, Seven, Eight, and Nine are procedurally defaulted because they were "not raised and ruled upon by the PCR judge . . . ." ECF No. 21-16 at 18, 19, 20, 23, 24, 25, 26. Petitioner asserts that he did everything he could to present each of his Grounds to the PCR court by presenting them in writing in his PCR application and making a strong effort to "elaborate" on them during the PCR hearing. ECF No. 26-3 at 6. He asserts that if his efforts were not sufficient to bring his Grounds before the PCR court for a decision, any procedural default of his substantial claims of ineffectiveness of trial counsel were caused by ineffective assistance of PCR counsel and a miscarriage of justice would occur if this court fails to consider the merits of his Grounds. *Id.* at 7.

As previously noted, "a federal habeas court may consider only those issues which have been 'fairly presented' to the state courts." *Matthews v. Evatt*, 105 F.3d at 911. Although the claims presented in federal court and state court need not be "identical," *see Ramdass v. Angelone*, 187 F.3d 396, 409 (4th Cir. 1999), the petitioner must present the "'substance' of his federal habeas corpus claim" to the highest state court with authority to consider it. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)). Presenting the "substance" of the claim requires that the claim '"be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)). "In other words, fair presentation contemplates that 'both the operative facts' and the 'controlling legal principles' must be presented to the state court." *Matthews*, 105 F.3d at 911 (quoting *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992)).

As noted above, Petitioner listed 18 separate issues in his pro se PCR application. ECF No. 21-8 at 8-13. Although the words used to express those issues in the application are not

exactly the same as the words that Petitioner uses to express the ten Grounds that he raises in this case, *see supra* note 10 and accompanying text (adopting Petitioner's "Table of Contents" Grounds as the operative Grounds in this Report), review of the issues stated in the PCR application discloses that the substance of each of the current ten Grounds was substantially covered in the PCR application. Also, Petitioner testified at the conclusion of his direct testimony at the PCR hearing that he was at the hearing because of "everything [he] raised in [his] PCR application . . . ." App. 67. Additionally, when Petitioner expressed concern at the conclusion of all testimony at the PCR hearing that he had been "stopped" and not allowed to "elaborate" on each of the issues in his application and that he, therefore, feared the State would contend that he had not exhausted each claim, App. 84-86, he was allowed to briefly summarize the issues that he felt he had not addressed sufficiently in testimony, App. 86. Both PCR counsel and the PCR court assured him that his application was "part of the record." App. 87. Although the PCR court did not explicitly address each of Petitioner's numerous issues separately in its Order of Dismissal, it did specifically and explicitly address the issues relevant to his current Grounds Two and Three. After doing so, the PCR court included a separate paragraph in the final judgment that collectively addressed "any and all allegations that were raised in the application or at the hearing . . ." and ruled that none were meritorious because Petitioner "failed to present any testimony, argument, or evidence at the hearing regarding such allegations . . . [and] has abandoned any such allegations." App. 96 (the "catch-all paragraph"). When Petitioner's appointed PCR appellate counsel filed a *Johnson* petition, Petitioner raised issues relating to each of his current ten Grounds in the pro se brief that was authorized by the Supreme Court of South Carolina. ECF No. 21-11.

Under the circumstances recounted above, the undersigned disagrees with Respondent's contentions on the topic of procedural default. Petitioner did as much as he possibly could as a

pro se litigant to bring his claims of ineffective assistance of counsel and involuntary plea before the highest court with jurisdiction to decide them. *See Mathews v. Evatt*, 105 F.3d at 911; *see also Gordon v. Braxton*, 780 F.3d 196, 201 (4th Cir. 2015) (petitioner fairly presented his claim to the state court where the "operative facts" were discussed and applicable legal opinions were cited indicating the "federal nature" of the claim); *Boseman v. Bazzle*, 364 F. App'x 796, 803-04 (4th Cir. 2010) (rejecting a procedural-default contention; claim fairly presented to court despite lack of "separate, specific allegation" of ineffective assistance based on certain facts where that was a general "alibi" ground asserted and the petitioner's alibi arguments included the relevant facts); *see also Fullwood v. Lee*, 290 F.3d 663, 676 n.4 (4th Cir. 2002) (claim not defaulted even though "the current emphasis of  . . . claim seems to be slightly different [in federal court] than it it was in state court."). Petitioner submitted detailed pleadings and pro se briefs at each level of the state process that included the substance of his PCR issues and extensive factual and legal arguments relating to them, whether authorized to do so or not. *See supra* note 5. Thus, the undersigned finds that Petitioner should not be precluded from presenting any of his Grounds in this court simply because the PCR court did not explicitly and separately address each and every one of them in its final judgment. This is particularly true where Petitioner clearly expressed his concern over exhaustion of each claim and was assured that the issues raised in his PCR application were "part of the record" of the PCR proceeding. Therefore, despite Petitioner's citation to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) in his response to Respondent's claims of procedural default, ECF No. 26-3 at 8, it is unnecessary for this court to conduct a procedural default analysis under *Martinez* for any Ground because none of Petitioner's Grounds was procedurally defaulted in the PCR court as Respondent contends.[12] Accordingly, the undersigned

---

[12] Nevertheless, should the district court find that Respondent's procedural-default claims directed to any of Petitioner's Grounds are meritorious, in light of the findings and

undersigned will address the merits of each of Petitioner's Grounds below.

      C.      Merits Analysis: Grounds One through Ten

              1.      Ground One (restated): Counsel was ineffective in failing to inform Petitioner of the full and correct information on mere presence and giving incomplete erroneous advice on record on what constituted guilt of the pending charges

                    a.      The Parties' Contentions

Respondent contends that the PCR court's determination that Petitioner failed to prove that plea counsel was ineffective in his explanation of applicable law to Petitioner is reasonable and fully supported by the transcript of the plea hearing and by plea counsel's credible testimony at the PCR hearing. ECF No. 21 at 20. Petitioner responds that the PCR court's determination on this issue represents an unreasonable application of the facts because the plea hearing transcript shows that the "technical explanation" provided by plea counsel and the plea court "in no way gave Petitioner a full complete understanding of the law in relation to mere presence." ECF No. 26 at 7. Petitioner asserts that he had "such an incomplete understanding of [the] charge that the plea cannot stand as [an] intelligent admission of guilt . . . ." *Id.* at 8.

                    b.      Applicable Law

Even though the entry of an *Alford* plea does not require the pleading defendant to explicitly admit guilt, in the context of collateral attacks on convictions and sentences, courts review *Alford* pleas under the same standards as guilty pleas. *Price v. Johnson*, 218 F. App'x 274, 275 (4th Cir. 2007*); LaRoche v. Dunlap*, No. 4:14-cv-00222-JMC, 2015 WL 1298473, at *3

---

recommendations contained in this Report regarding the legal sufficiency of Petitioner's claims that plea counsel provided ineffective assistance, *Martinez* would not assist Petitioner. As discussed herein, none of his ineffective-assistance claims is "substantial." Thus, Petitioner cannot show the required "cause" to excuse the procedural default because PCR counsel was not ineffective for failing to explicitly pursue and preserve them before the PCR court. *See Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013); *Fowler v. Joyner*, 753 F.3d 446, 461-62 (4th Cir. 2014).

(D.S.C. Mar. 23, 2015), *appeal dismissed*, 607 F. App'x 323 (4th Cir. 2015). A guilty plea is constitutionally valid if it "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. at 31). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). A plea is knowingly and intelligently made if a defendant is "'fully aware of the direct consequences'" of his guilty plea and not induced by threats, misrepresentation, including unfulfilled or unfulfillable promises, or by "'promises that are by their nature improper as having no relationship to the prosecutor's business.'" *Brady v. United States*, 397 U.S. 742, 755 (1970) (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957)). Because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed. *Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977). Therefore, statements made during a guilty plea should be considered conclusive unless a criminal inmate presents reasons why he should be allowed to depart from the truth of his statements. *Crawford v. United States*, 519 F.2d 347 (4th Cir. 1975), *overruled on other grounds by United States v. Whitley*, 759 F.2d 327, 350 (4th Cir. 1985); *Edmonds v. Lewis*, 546 F.2d 566, 568 (4th Cir. 1976). Also, the Fourth Circuit has held that a PCR court's credibility findings are entitled to deference by this court. *Wilson v. Ozmint*, 352 F.3d 847, 858-859 (4th Cir. 2003); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008). The United States Supreme Court has ruled that "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Finally, the Fourth Circuit

has also held that district courts should "accord appropriate deference" to the state PCR court's factual findings and that such findings are presumed to be correct and can only be overcome by the presentation of "clear and convincing evidence." *Watkins v. Rubenstein*, 802 F.3d 637, 643 (4th Cir. 2015) (citing 28 U.S.C. § 2254(e)(1) and *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011)).

c.    Discussion

Petitioner argues that he would not have entered an *Alford* plea had he been given clear and correct information from plea counsel and the plea court about constructive possession, which he states would have been that "mere presence does not order matically [sic] constitute constructive possession." ECF No. 26 at 22. However, he does not mention the fact that PCR counsel testified that the State was prepared to present evidence from law enforcement officials that a confidential informant purchased drugs from Petitioner at the same residence and would claim that Petitioner "lived" at that residence. Also, Petitioner does not deny that plea counsel provided the simple explanation of the law relating to constructive possession both at the plea hearing and the PCR hearing. Instead, Petitioner argues that, regardless of what he told the plea court, he never understood what plea counsel or the plea court told him. Petitioner gave substantial testimony on both direct and cross examination at the PCR hearing about his claim that plea counsel gave him incorrect legal advice on the issue of how "mere presence" in a place where drugs were found plays into the doctrine of constructive possession and whether and how that doctrine would support a finding of guilty of each of the charges that were pending against him. App. 58, 69. Plea counsel testified that he understood Petitioner's contentions that he was only present at the house where drugs and guns were found and, therefore, could not be found criminally liable for possession or trafficking as charged in the indictments against him. He also testified that he thought that he had fully explained the legal concept of constructive

41

possession—which encompasses Petitioner's arguments on "mere presence"—to Petitioner and that he fully answered all of Petitioner's questions about applicable law. Additionally, the transcript of the plea hearing shows that when Petitioner questioned the propriety of the charges to which he claimed the desire to enter an *Alford* plea, the plea court stopped the plea colloquy and specifically inquired whether plea counsel had explained the law to Petitioner. Plea counsel said that he had and then explained that he had explained that a person can be held legally responsible for possessing drugs or firearms that are found in a place over which that person can exert some control even if the drugs or guns are not taken from the actual possession of that person, *i.e.*, the doctrine of constructive possession. When the plea colloquy continued after the plea court received assurance from Petitioner that he wanted to enter a plea and not continue the jury trial that had already begun, Petitioner clearly told the plea court that he understood the charges to which he was pleading and that he was satisfied with plea counsel's representation. At the PCR hearing, Petitioner confirmed that he was telling the truth in his responses to the plea court's questions, and he did not dispute that plea counsel provided the legal explanation about constructive possession that he testified he gave Petitioner. Instead, it appears from his testimony at the PCR hearing and from his arguments in this court that Petitioner simply disagreed with plea counsel's analysis of how the facts of his case could support convictions through application of the constructive-possession doctrine had the case gone to the jury. As noted previously, although it did not explicitly address Petitioner's contentions regarding the sufficiency of plea counsel's legal explanations in its final order, the PCR court found that plea counsel's testimony before it was credible, but that Petitioner's was not and stated generally that Petitioner had not proven that plea counsel was ineffective.

Having reviewed the record in this case and the submissions of the parties and giving due deference to the PCR court's credibility determination and factual findings, the undersigned

finds that Petitioner is not entitled to habeas relief on his Ground One. The PCR court was in the best position to hear and observe both Petitioner and plea counsel when they testified at the PCR hearing and it reasonably found that plea counsel's hearing testimony was more credible than Petitioner's and nothing on the record before this court indicates that the court's credibility determination was unreasonable. Moreover, the record shows that Petitioner did not produce any substantive evidence other than his own, self-serving and after-the-fact testimony to dispute the truthfulness of his affirmative responses to the plea court's questions during the plea hearing about his understanding of the charges to which he was pleading and about his satisfaction with plea counsel's services. In this case, Petitioner spends a great deal of time in his Response to the Motion for Summary Judgment making unsupported assertions that he rebutted the presumption of correctness of the State court findings by clear and convincing evidence, but it is settled that "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995). Although Petitioner testified at the PCR hearing that unnamed family members and friends were involved in his discussions about the plea with plea counsel and the transcript of the plea hearing makes clear that Petitioner's mother was present in the courtroom during the taking of the plea, he presented no live testimony or verified affidavits from any friends or family members to the PCR court to support his claim that he was not given adequate legal information before entering his plea.[13] To

---

[13] Two affidavits (one signed by "Debrah Patrick" who might be Petitioner's mother or some other family member) dated June 15th, 2012 are included at the very end of Petitioner's supporting documents submitted along with his Petition, ECF No. 1-13 at 33-34; however, there is nothing in the transcript of the PCR hearing or in any other official court documents in the record before this court produced by Respondent showing that these affidavits were ever proposed for admission into evidence in any proceeding. This court cannot consider the contents of those affidavits in connection with its review of Petitioner's Petition because they are not part of the official record that was before the PCR court. *Cullen v. Pinholster*, 563 U.S. at 181 (federal courts' review under § 2254 is limited to "the record that was before the state court that adjudicated the claim on the merits").

the extent that Petitioner places the blame for his lack of proof on the shoulders of his PCR counsel, ECF No. 26-3 at 9, he fails to state any plausible freestanding claim for federal habeas relief because ineffective assistance of PCR counsel is not cognizable in a habeas-corpus action under § 2254. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Martinez v. Ryan*, 132 S. Ct. at 1318-19 (establishing an exception to the general rule of non-cognizability stated in *Coleman*); *Taylor v. Warden at Allendale,* No. 2:13-cv-2213-RMG, 2014 WL 4721183, **4-5 (D.S.C. Sept. 22, 2014) ("freestanding" claims of ineffective assistance of PCR counsel or error by PCR court are not cognizable under § 2254 where the *Martinez v. Ryan* procedural-default exception is not implicated).

Furthermore, Petitioner has not shown anything that would overcome the "strong presumption of veracity" carried by his statements at the guilty plea hearing of a voluntary, knowing, and intelligent decision to plead guilty. *See United States v. Morrow*, 914 F.2d 608, 614 (4th Cir. 1990); *Turner v. Warden*, *Livesay Corr. Inst*., No. 6:11-2692-RBH, 2012 WL 3834840, at *9 (July 27, 2012), *report and recommendation adopted*, 2012 WL 3834863 (D.S.C. Sept. 4, 2012). The transcript of the plea hearing shows that the trial court listened patiently and responded clearly to Petitioner's questions about "mere presence." In fact, the plea court directly addressed plea counsel on the subject and had him state on the record that he had explained the related concept of constructive possession to Petitioner. Petitioner did not deny that he was given that information at either the plea hearing or the PCR hearing and he did not tell the plea court that he did not understand what plea counsel had told him about the applicable law. Although Petitioner cites to Federal Rule of Criminal Procedure 11 and discusses federal cases addressing the standards for plea colloquies established by the Rule and argues that the plea court's

44

inquiries were inadequate to ensure that his plea was knowing, intelligent, and voluntary, *see, e.g.*, ECF No. 26 at 20, the sufficiency of a State of South Carolina plea court's colloquy is not to be judged by Rule 11 standards. *See Wade v. Coiner*, 468 F.2d 1059, 1060 (4th Cir. 1972) (holding that state judges are not constitutionally required to conform their plea colloquies to Rule 11 standards); *Miles v. Dorsey*, 61 F.3d 1459, 1467 (10th Cir. 1995) ("Rule 11 [of the Federal Rules of Criminal Procedure] only sets the standard for federal courts; it does not necessarily establish a constitutional prohibition applicable in state courts."); *Folkes v. Warden Cartledge, PCI*, No. 2: 13-cv-00147-RMG, 2013 WL 6662554, at *8 (D.S.C. Dec. 17, 2013).

It appears that Petitioner simply was not told by either plea counsel or the plea court what he wanted to hear: that a jury would absolutely acquit him of all pending charges despite the State's additional evidence that he lived at the residence where drugs and guns were seized and participated in previous drug sales from the residence. Now—in hindsight after entering an *Alford* plea and receiving the sentence that was negotiated in exchange for the State's dismissal of other pending charges relating to drug sales—he wishes to undo the entire process by claiming that he *did not* understand what he told the plea court under oath that he *did* understand. Despite his current after-the-fact protestations that he would not have entered the plea had the legal theory of constructive possession been explained somehow differently, the fact of the matter is that the record shows that Petitioner was not facing a trial in which the State's only evidence against him would be that he was present in the house where there were drugs and guns. There was other substantial evidence available to the State in the form of law-enforcement testimony and, perhaps, informant statements that would refute his claim of "mere presence." Petitioner's entry of an *Alford* plea in the face of such evidence in return for a negotiated sentence of less time than he was facing had the case gone to a jury was entirely reasonable. Under these circumstances, as the PCR court concluded, plea counsel's advice to Petitioner to

enter the *Alford* plea despite his claim that he was merely present at the location of the search and seizure was clearly reasonable under prevailing professional norms. App. 95 (finding that Petitioner did not meet "his burden of proving counsel failed to render reasonably effective assistance [or that] his guilty plea was not knowing and voluntary"). This court should not permit Petitioner to undo the plea that he entered because he does not agree with plea counsel's explanation of a particular legal theory that could have been applied to evidence in his case had he gone to trial. After previously acknowledging, under oath, understanding of the charges to which he pleaded and satisfaction with plea counsel's representation, Petitioner has not proven that his *Alford* plea was involuntary or coerced because plea counsel's analysis of the facts and applicable law was not the same as his. Both the plea hearing transcript and the PCR hearing transcript show that Petitioner was given a reasonably competent explanation of the legal concept of constructive possession, which could have been relied on by the State to overcome Petitioner's assertions that he was merely present in the place where the drugs and guns were seized through introduction of law-enforcement testimony relating to the drug-sales charges that were also pending against Petitioner. Although Petitioner now argues that the explanation was too technical for him to understand, the record shows that plea counsel credibly testified that he gave the explanation more or less in layman's terms and not in an excessively legalistic or technical way. Thus, the undersigned finds that the PCR court's rejection of Petitioner's claims of ineffective assistance of counsel and involuntary plea presented under this Ground represents a reasonable interpretation of the record facts and is not contrary to established federal law. *See, e.g.*, *Premo v. Moore*, 562 U.S. at 132; *Tollett,* 411 U.S. at 266-67. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground One.

2.    Ground Two (restated): Due Process was violated because Petitioner was not adequately advised on the mandatory minimum sentence had Petitioner

decided to stand trial by court or counsel and [by] the judge participation influencing the plea through coercion and duress with counsel

a.    Parties' Contentions

Respondent does not specifically address the exact facts urged by Petitioner in support of this Ground; however, he broadly contends that the PCR court's finding that Petitioner failed to prove that the plea court coerced Petitioner was reasonable in light of the transcript of the plea hearing. ECF No. 21 at 20-21. Petitioner contends that the plea court coerced him because it did not specifically tell him what "mandatory minimum" sentence he could have received had he gone to trial. ECF No. 26 at 37.

b.    Discussion

Although the PCR court did not explicitly discuss the facts underlying this particular Ground in its final judgment, Petitioner did briefly testify about his lack of information about "minimum sentences" at the close of the PCR hearing. App. 71. The transcript of the plea hearing shows that the plea court refused Petitioner's request to be told if the judge would have given him "another chance" through a probationary sentence or "anything" if he had been found guilty. App. 21. This record evidence was clearly before the PCR court when it broadly found that the plea transcript refuted Petitioner's less-than-credible claims of coercion and that Petitioner failed to "meet his burden of proving his guilty plea was not knowing and voluntary." App. 95.

Having reviewed the entire record and the submission of the parties in this case, the undersigned finds that the PCR court's rejection of the Petitioner's claim that the plea court coerced his *Alford* plea was reasonable. As noted by the PCR court, the plea hearing transcript refutes Petitioner's unsupported assertions that he was not sufficiently informed of any aspect of the sentencing consequences he faced had he not entered a plea and gone through with the trial

and been convicted. The plea court clearly discussed the fact that Petitioner's negotiated sentence of 20 years was considerably less than the maximum of 50 years that he faced if the jury convicted him. Despite Petitioner's contentions in connection with this Ground, there is no evidence in the record before this court that he faced any "mandatory minimum" sentence on any of the charges that were pending against him when he told the plea court that he wanted to enter an *Alford* plea. Furthermore, Petitioner does not show that there is any constitutional requirement that a state plea court advise a pleading defendant of the minimum sentence he could receive after a jury trial in absence of a factual scenario involving crimes that carry mandatory minimum sentences. His contentions regarding this Ground are not aided by Petitioner's citation of irrelevant case law involving crimes to which pleas were entered that clearly carried mandatory minimum sentences such as *Pittman v. State*, 524 S.E.2d 623, 600 (S.C. 1999) ("armed robbery charge carried a mandatory minimum sentence of ten years . . . ."), ECF No. 26 at 37, or the citation of federal cases that either did not involve guilty pleas, *id*. at 41 (citing *United States v. Munoz*, 150 F.3d 401, 406 (5th Cir. 1998) (appeal of sentence entered on a jury verdict); *United States v. Rivera*, 900 F.2d 1462, 1465 (10th Cir. 1990) (same); *United States v. Fernandez*, 145 F.3d 59, 61 (1st Cir. 1998) (same)), or where the adequacy of plea colloquies were, unlike here, governed by the Federal Rule of Criminal Procedure 11. ECF No. 26 at 41, 43 (citing *United States v. Hourihan*, 936 F.2d 508 (11th Cir. 1991); *United States v. Cobia*, 41 F.3d 1473 (11th Cir. 1995); *United States v. Casallas*, 59 F.3d 1173 (11th Cir. 1995)). As previously noted, the plea court, as a state court in South Carolina, was not constitutionally obligated to conduct a plea colloquy that complied with the Federal Rules of Criminal Procedure. *Wade v. Coiner,* 468 F.2d at 1060.

Additionally, Petitioner has not shown that there is a constitutional requirement that a plea court tell a pleading defendant what sentence he might have entered had the case gone to

48

trial and resulted in a jury verdict. Any such requirement would only invite improper speculation because the plea court had not heard all the evidence or arguments of counsel that might have affected any sentencing decision the court made at the conclusion of a trial. *See Johnson v. Pratt*, 20 S.E.2d 865, 876 (S.C. 1942) (courts should not "look beyond the evidence in [a] particular case . . . [or] venture into fields of speculation as to what might occur under states of fact which are not in evidence"). As noted by the PCR court, the record refutes Petitioner's assertions that the plea court coerced his plea in any regard. Petitioner was advised by both plea counsel and the plea court of the maximum sentences he faced had he gone to trial and of the sentencing consequences of his plea, which included a negotiated 20-year sentence. The record also clearly shows that Petitioner was given every opportunity to change his mind about entering the *Alford* plea and he denied that he had been coerced or forced to act in any manner concerning his plea.

Finally, Petitioner's attempt to use his claim that he is "innocence [sic] crimes charges [sic]" and his claim that "the accused may not always answer the courts interrogation in a plea proceeding with complete candor" as support for Ground Two are clearly unavailing. ECF No. 26 at 42. The fact that he maintained innocence is irrelevant to the question of coercion because Petitioner was never required to admit guilt to the charges under his *Alford* plea. Petitioner presented no probative evidence to the PCR court and has not presented evidence to this court that would require either court to disregard the affirmative responses he made under oath to the plea court's questions about his understanding of the sentencing consequences of his plea. Hence, the undersigned finds that the PCR court's implicit determination that the facts and argument that would arguably support the contentions in Petitioner's Ground Two did not prove that the plea court coerced his plea was entirely reasonable and supported by the record. The record shows that Petitioner was sufficiently informed of potential sentencing consequences so that he could intelligently choose to enter an *Alford* plea and that he did so freely and

voluntarily. *See Lowery v. Warden*, No. 9:09-cv-2352-CMC-BM, 2010 WL 2347033, at *6 (May

20, 2010*), report and recommendation adopted*, 2010 WL 2347036 (D.S.C. June 8, 2010) (citing

*Little v. Allsbrook,* 731 F.2d 238 (4th Cir. 1984); *United States v. Futeral,* 539 F.2d 329 (4th Cir.

1975)); *see also Brady v. United States,* 397 U.S. at 746-49 (pleading guilty to avoid a

reasonable possibility of receiving a greater sentence does not constitute a coerced plea).

Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's

Ground Two.

> 3.     Ground Three (restated): Due Process violated because counsel was ineffective for failing to subpoena witness with exonerating evidence, failing to corroborate the statement so that it could be admitted into evidence at trial, and failing to ask for a continuance until witness appeared or was found

> a.     The Parties' Contentions

Respondent contends that the PCR court reasonably found that Petitioner failed to prove

that plea counsel was ineffective in connection with his handling of the Foster statement because

credible testimony from plea counsel shows that his actions did not fall below the applicable

standard for competent counsel. ECF No. 21 at 22. Respondent also contends that the PCR

court's finding on this Ground was reasonable where Petitioner did not produce admissible

testimony or an admissible statement or affidavit from Ms. Foster to support his claim that he

was prejudiced by plea counsel's inability to have the Foster statement introduced at trial

because it would "exonerate" him. *Id.* Petitioner responds that this court should not afford

deference to the PCR court's determination that plea counsel was not ineffective and should

"independently decide whether counsel's conduct [regarding attempts to secure witnesses]

passes muster under federal law." ECF No. 26 at 44. Petitioner asserts that the PCR court's

decision was unreasonable where the record shows that plea counsel did not understand the law that would make the "exonerating" Foster statement admissible into evidence at trial, failed to make adequate effort to locate favorable alibi and eyewitnesses, and failed to request a continuance to conduct additional investigation. *Id.* at 51-52. Petitioner also contends that his constitutional rights were violated when the PCR court refused to order the State to produce a copy of the transcript of the aborted trial proceedings so that Petitioner could provide evidentiary support his claims of ineffective assistance of counsel. *Id.* at 57.

b.    Applicable Law

Where claims of ineffective assistance of counsel based on allegations of inadequate pretrial investigation are concerned, the Fourth Circuit has held that counsel must conduct a basic factual and legal investigation to determine if a defense is available or can be developed. *Sneed v. Smith,* 670 F.2d 1348, 1352 (4th Cir. 1982). "At the heart of effective representation is the independent duty to investigate and prepare." *Stevens v. Johnson*, 575 F. Supp. 881, 885 (E.D.N.C. 1983) (citing *Goodwin v. alkcom,* 684 F.2d 794, 805 (5th Cir. 1982), *cert. denied,* 460 U.S. 1098, (1983)). "Informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel." *Id.* (citing *Gaines v. Hopper,* 575 F.2d 1147, 1149-50 (5th Cir. 1978)). The Fourth Circuit and this court have found that a habeas petitioner does not sustain his burden of proof on an ineffective-assistance claim for failure to locate or call witnesses if the alleged witness is not called to provide testimony to the state court considering the claim. *E.g.*, *Bassette v. Thompson*, 915 F.2d 932, 939-41 (4th Cir. 1990); *Joe v. Padula*, No. 9:11-cv-1090-TLW-BM, 2012 WL 2339634, at *7 (D.S.C. Mar. 1, 2012), *report and recommendation adopted*, 2012 WL 2325662 (D.S.C. June 19, 2012); *see also Bannister v. State*, 509 S.E.2d 807, 809 (S.C. 1998) ("This Court has repeatedly held a PCR applicant must produce the testimony of a favorable

51

witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial."); *Glover v. State*, 458 S.E.2d 539, 540 (S.C. 1995) ("[B]ecause the other witnesses respondent claimed could have provided an alibi defense did not testify at the PCR hearing, respondent could not establish any prejudice from counsel's failure to contact these witnesses."); *Clark v. State*, 434 S.E.2d 266, 267-68 (S.C. 1993) (pure conjecture as to what a witness' testimony would have been is not sufficient to show a reasonable probability the result at trial would have been different); *Underwood v. State*, 425 S.E.2d 20, 22 (S.C. 1992) (prejudice from trial counsel's failure to interview or call witnesses could not be shown where witnesses did not testify at PCR hearing). Also, this and other federal courts have held that where trial strategy is concerned in an ineffective-assistance-of-counsel claim, the United States Supreme Court has stated, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Hamilton v. Warden, Lieber Corr. Inst.*, No. 5:13-2506-MGL, 2015 WL 251243, at *17 (D.S.C. Jan. 20, 2015) (quoting *Strickland*, 466 U.S. at 689); *see Emmett v. Kelly*, 474 F.3d 154, 167-69 (4th Cir. 2007) (no prejudice to petitioner from counsel's trial strategy not to call certain witnesses in mitigation); *Lovitt v. True*, 403 F.3d 171, 181 (4th Cir. 2005) (refusing to misuse "power of hindsight" to second guess trial counsel's "plausible strategic judgments.") (quoting *Bunch v. Thompson*, 949 F.2d 1354, 1364 (1991)).

c.    Discussion

Having reviewed the record in this case and the submissions of the parties and giving due deference to the credibility determinations and factual findings of the state court, the undersigned finds that Petitioner has failed to show that the PCR court's decision that plea counsel's pretrial

investigation and efforts to use the Foster statement in connection with a defense to the charges that were pending against Petitioner was unreasonable.[14] Initially, the PCR court's decision on Petitioner's PCR claim underlying this Ground was reasonable where Petitioner failed to produce competent and admissible evidence that would properly place before the PCR court the issue of the nature and extent of any harm or prejudice that Petitioner might have suffered from plea counsel's inability convince the plea court to admit the Foster statement. *See Bassette v. Thompson*, 915 F.2d at 939-41 (habeas petitioner does not sustain his burden of proof on an ineffective-assistance claim for failure to locate or call witnesses if the alleged witness is not called to provide testimony to the state court considering the claim). In this proceeding under § 2254, Petitioner may not rely on his allegations of ineffective assistance of PCR counsel to excuse this failure to proof. *See Lawrence v. Branker*, 517 F.3d at 717 (freestanding claims of ineffective assistance of PCR counsel or PCR court error are not cognizable under § 2254). Also, Petitioner exaggerates the potential impact that admission of the Foster statement might have had on the pending charges when he argues throughout his Response that it would "exonerate" him and that he would not have entered the *Alford* plea had the statement been admitted. The record shows that plea counsel clearly testified that he was not as impressed with the Foster statement as Petitioner was and that it conflicted with the State's other available evidence that could support a jury finding that Petitioner exerted sufficient control over the premises where the drugs

---

[14] In addition to Stephaney Foster, who was the only "un-called" witness discussed during the PCR hearing, Petitioner also asserts that plea counsel should have located and produced testimony from four other persons whose names were never raised or whose supposed exculpatory testimony was never discussed during the PCR hearing. ECF No. 26 at 46. Petitioner does not provide this court with any citation to a location in the record where his current contention that plea counsel should have contacted them was raised before any state court. Without appropriate record citations, this court cannot be expected to expend excessive judicial resources to search through over 500 pages of documents in an attempt to locate any such claim relating to those four persons. Therefore, Petitioner's allegations that plea counsel was ineffective for failing to "call" them should be rejected without discussion.

and guns were seized to be found guilty of the charges against him. Thus, although the statement could have been "helpful" to the "mere presence" defense that Petitioner refers to throughout his pleadings and supporting documents, it was not absolutely exonerating and, therefore, his after-after-the-fact assertions that he would not have entered his *Alford* plea had plea counsel handled the Foster statement differently are unconvincing. Additionally, regardless of Petitioner's unsupported assertions otherwise, the record shows through plea counsel's PCR testimony, which the PCR court reasonably found to be credible, that reasonable effort was made to locate Ms. Foster before Petitioner's trial began so that she could be subpoenaed to provide live testimony relative to the contents of the disputed statement. However, plea counsel stated that those efforts proved futile because he was unable to locate her with the contact information that Petitioner had provided. Petitioner's PCR counsel said that he had the same problems locating this potential witness when the topic of whether Ms. Foster would testify was discussed during the PCR hearing.

On this record, the undersigned concludes that the PCR court was fully justified to believe plea counsel's testimony on this issue and to disbelieve Petitioner's testimony that inadequate effort was made to find the witness. Furthermore, the PCR court's decision on this claim is completely reasonable because there is competent record evidence showing that counsel's choices of how or if to present the statement were based on reasonably competent legal strategy. Plea counsel clearly testified that he was not as impressed with the statement as Petitioner seemed to be due to what he perceived as problems with Ms. Foster's credibility in light of the State's evidence in the form of law-enforcement and/or informant testimony placing Petitioner at the residence and conducting drug sales from the residence. Plea counsel also testified that he was more concerned with addressing the state's evidence showing that Petitioner sold drugs to an informant out of the residence where the drugs and guns that were the subject of

54

the charges to which Petitioner pleaded were seized. Even if this court might have reached a different conclusion on this issue had it been presented with the facts shown on this record in the first instance, Petitioner has not presented clear and convincing evidence showing that the PCR court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102. Finally, Petitioner's failure to sustain his burden of proof on this claim of ineffective assistance of counsel cannot be excused even if PCR counsel was ineffective for not independently obtaining a transcript of the aborted trial and not producing Ms. Foster to testify at the PCR hearing or if the PCR court incorrectly refused to order the State produce a trial transcript because ineffectiveness of PCR counsel and PCR court error are not cognizable under § 2254. On this record, this court should defer to the PCR court's rejection of this claim of ineffective assistance of counsel because that decision was reasonable and not contrary to established federal law. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Three.

    4.    Ground Four (restated): Petitioner's due process rights were violated because counsel was ineffective by giving incorrect legal advice regarding the firearm charge and exerting pressure on Petitioner to plead to the charge

    a.    The Parties' Contentions

Respondent contends that Petitioner's allegations and arguments on this Ground were reasonably rejected by the PCR court because he relies on federal law relating to federal statutes governing firearm possession which is not applicable to the state law under which he was charged. ECF No. 21 at 18. Petitioner responds that "federal law is enforceable in state courts . . . because the constitution and laws passed pursuant to it are as much laws in the states as laws

55

passed by state legislatures." ECF No. 26 at 63-64. Petitioner contends that the PCR court unreasonably found that plea counsel was not ineffective or coercive for advising Petitioner to enter an *Alford* plea to the firearm-possession charge or to formulate a trial defense based on the lack of evidence showing that he used the seized firearms in furtherance of a drug-trafficking crime or that he constructively possessed the guns that were seized. *Id.* at 67, 72.

b.    Discussion

The record in this case shows that the PCR court reasonably rejected Petitioner's claim of ineffective assistance/involuntary plea relating to plea counsel's advice that Petitioner plead to the firearm charge because Petitioner's contentions and accompanying legal argument to support the claim were based entirely on inapplicable federal law: 18 U.S.C § 924 and federal case law interpreting that statute. Petitioner entered an *Alford* plea to a criminal charge based on a state firearm-possession statute, not a federal one. App. 103 (indictment under S.C. Code § 16-23-16-23-490). As a result, the federal law interpreting a federal statute upon which Petitioner based this claim is irrelevant. *See Sherman v. Scribner*, No. CV 06-1945 SVW(JC), 2011 WL 9378179, at *4 n.10 (Aug. 11, 2011) *report and recommendation adopted*, 2012 WL 5456359 (C.D. Cal. Nov. 1, 2012) (rejecting a petitioner's habeas ground challenging a state conviction by alleging violations of federal Speedy Trial Act because the federal law was "not at issue" in the state proceedings); *Benefield v. Ryan*, No. CV-11-438-PHX-ROS (LOA), 2012 WL 3228784, at *18 (July 2, 2012) *report and recommendation adopted*, 2012 WL 3234117 (D. Ariz. Aug. 6, 2012) (same; "the federal Speedy Trial Act is inapplicable, because Petitioner was not charged with violating federal law"). Petitioner's reliance on irrelevant law did not show that plea counsel was ineffective in his advice that Petitioner plead to the state charge where the record shows that, under prevailing professional standards, plea counsel reasonably advised and did not coerce Petitioner to enter the *Alford* plea. This is especially true in light of the State's available evidence

56

relating to the also-pending drug-sale charges arguably showing that Petitioner exerted sufficient control over the place where the guns were seized. *See State v. Whitesides*, 725 S.E.2d 487, 490 (S.C. 2012) (interpreting S.C. Code Ann. § 16-23-490; the required "nexus between possession of a firearm and drug trafficking would exist if the firearm is accessible to the trafficker and thereby 'provides defense against anyone who may attempt to rob the trafficker of his drugs or drug profits.'"); *see also State* v. *Thompson*, 776 S.E.2d 413, 610-11 (S.C. Ct. App. 2015) (finding sufficient evidence of constructive possession of firearm to go to a jury considering a charge under § 16-23-490). Furthermore, as previously noted with respect to his other Grounds, Petitioner's failure to provide proof on this claim cannot be excused by his claims of PCR court error or PCR counsel ineffectiveness. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Four.

     5.    Ground Five (restated): Petitioner's due process rights were violated because counsel was ineffective for failing to challenge the unconstitutional prior conviction utilized to enhance Petitioner's sentence and informing Petitioner that if he testified or if he was found guilty the prior conviction would be used to push for the maximum sentence

     a.    The Parties' Contentions

Respondent contends that the PCR court reasonably rejected Petitioner's claim on which this Ground is based because the charges to which Petitioner pleaded were based on the amount of drugs seized and not on Petitioner's prior record, Petitioner waived any right to challenge the negotiated 20-year sentence when he voluntarily entered the *Alford* plea, and there was no proof that Petitioner was prejudiced by the alleged failure to challenge a 1995 armed-robbery conviction where the record showed that he had other criminal convictions from 2006 that a court could consider in connection with a sentencing decision following a jury conviction. ECF

57

No. 21 at 19. Petitioner responds that he was prejudiced by plea counsel's failure to challenge the 1995 conviction because it was used to threaten him into entering the *Alford* plea to avoid credibility issues had he testified at a trial and "the harsh sentence" that he was told he could receive if convicted by a jury. ECF No. 26 at 90, 93. Petitioner also asserts that the PCR court's rejection of this claim was unreasonable where plea counsel was ineffective for failing to investigate the circumstances surrounding the 1995 conviction and for failing to argue that it was unconstitutionally entered as "mitigating evidence" for consideration by the sentencing court. *Id.* at 92, 94.

b.     Discussion

Following review of the record in this case and the parties' contentions and arguments, the undersigned finds that the PCR court reasonably rejected the claim underlying this Ground because Petitioner did not show ineffectiveness of counsel or coercion of the plea resulting from the State or the plea court's consideration of the 1995 conviction in connection with the formulation of what maximum sentence Petitioner would have faced had he been convicted by a jury. It is settled that a habeas petitioner cannot avoid the consequences of a guilty plea by claiming coercion due to fear of a harsher sentence that could be entered following a conviction. *See Brady v. United States,* 397 U.S. at 751 (pleading guilty to avoid a reasonable possibility of receiving a greater sentence does not constitute a coerced plea); *Dunn v. Bush*, No. 2:14-cv-2:14-cv-2277-RMG, 2015 WL 1190075 (D.S.C. Mar. 16, 2015); *Smoot v. McCall*, No. 9:13-cv-9:13-cv-00214-GRA, 2013 WL 5883395, at *17 (D.S.C. Oct. 30, 2013). Also, the record shows that the 1995 conviction was not used to "enhance" the sentence that he received because Petitioner's *Alford* plea included a 20-year negotiated sentence, and he affirmatively stated that he understood that he would receive that sentence if he pleaded. The undersigned finds that Petitioner has not shown anything that would overcome the "strong presumption of veracity"

58

carried by his statements at the guilty plea hearing that show a voluntary, knowing, and intelligent decision to plead guilty. *See United States v. Morrow*, 914 F.2d at 614. Additionally, regardless of his extensive factual assertions and legal argument before this court that the 1995 conviction was unconstitutional because he was a juvenile improperly tried and convicted as an adult, Petitioner failed to prove ineffectiveness of or coercion by plea counsel because he waived any right that he might have had to challenge any sentence that could have been enhanced by the prior conviction. *See Mabry v. Johnson,* 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."); *United States v. Wiggins,* 905 F.2d 51, 52 (4th Cir. 1990) ("A defendant who enters a guilty plea waives the right to raise a constitutional challenge to his or her conviction . . . except in narrow circumstances."). As previously stated, Petitioner's failure of proof on this issue cannot be excused by his allegations of PCR court error or PCR counsel ineffectiveness. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Five.

> 6.    Ground Six (restated): Petitioner's due process rights were violated because counsel was ineffective for failing to challenge the evidence that was used to support probable cause affidavit used to obtain the search warrant and failing to correct the State's *Brady* violations regarding evidence that Petitioner could have used to challenge the search warrant

> a.    The Parties' Contentions

Respondent contends that Petitioner waived this Fourth-Amendment-related Ground by voluntarily entering the *Alford* plea after plea counsel's motion to suppress was denied and thereby foreclosing any additional efforts by plea counsel to challenge the State's evidence that was seized under the search warrant. ECF No. 21 at 24. Petitioner responds that plea counsel was

ineffective because he did not challenge the probable-cause affidavit on the basis of unreliability of the confidential informant. ECF No. 26-1 at 16-17 (Response p. 117-18). Petitioner contends that the PCR's court's rejection of this claim was unreasonable because he "requested discovery, trial transcript and effective assistance of counsel and a full and fair hearing . . . ." and any failure of proof was the result of his inability to obtain a transcript of the aborted trial proceedings. *Id*. at 17 (Response p. 119).

b.    Discussion

Review of the record and the parties' submissions in this case shows that the PCR's court's rejection of this Fourth-Amendment related claim of ineffective assistance of counsel was reasonable. Plea counsel testified that he filed and argued a motion to suppress the evidence seized under the search warrant, but that it was denied by the plea court. The record also shows that after trial proceedings were underway, Petitioner stopped the proceedings by offering to enter an *Alford* plea to all charges without any further complaints about the underlying validity of the search-warrant affidavit. Thus, it was Petitioner's own decision, not plea counsel's, that prevented further challenges to the State's evidence under the Fourth Amendment. Other than Petitioner's unsupported PCR testimony and extensive legal arguments based on general Fourth-Fourth-Amendment-related cases, there is nothing in this record showing that Petitioner was not afforded a full and fair hearing on his suppression motion and, therefore, this court cannot offer habeas relief on his assertions that the search warrant was not supported by probable cause. *See Moore v. Hunt*, 499 F. Supp. 2d 679, 683 (W.D.N.C. 2007) (federal habeas review of a Fourth-Fourth-Amendment claim was "barred by *Stone v. Powell*" where petitioner was "afforded a full and fair opportunity to go to trial and litigate a Fourth Amendment search and seizure claim . . . but chose to plead guilty and waive his right to litigate this issue"); *Muldrow v. Warden of Manning Corr. Inst.*, No. 9:07-1315-TLW-GCK, 2008 WL 533803, at *12 (D.S.C. Feb. 26,

2008) (Petitioner was barred from habeas relief on a Fourth-Amendment claim where he was "given a full and fair chance to litigate the present issue in state court . . . ."). Furthermore, there is no record support for Petitioner's assertions that plea counsel's motion to suppress or his arguments on the motion were inadequate or unreasonable under prevailing professional norms. The evident failure of proof on this issue cannot be excused in this court by Petitioner's assertions of PCR court error or PCR counsel ineffectiveness. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Thus, the undersigned finds that Petitioner has not shown that the PCR court unreasonably rejected his claim underlying this Ground. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Six.

> 7.   Ground Seven (restated): Petitioner's due process rights were violated because he was denied a fundamentally fair process throughout collateral proceedings due to ineffective assistance of counsel in direct appeal, PCR, and PCR appellate review because all counsel failed to raise the obvious and substantial claims raised in this Petition

> a.   The Parties Contentions

Respondent contends the PCR court's rejection of the claim underlying this Ground was reasonable because the record shows that plea counsel was not ineffective in connection with Petitioner's direct appeal where he properly informed the appellate court as required under the state procedural rule specifically applicable to appeals following guilty plea that no there were no plausible issues preserved for its review because the entry of the *Alford* plea legally waived any contested trial-related legal issues that arose before the plea and no contemporaneous objections were made on any topic during the plea hearing. ECF No. 21 at 24. Petitioner

61

responds that plea counsel was ineffective because he abandoned his direct appeal by failing to raise substantial issues for review and "did not follow *Anders* procedures for withdrawal." ECF Nos. 26-1 at 88, 95-96; 26-2 at 2 (Response pp. 190, 197-98, 200). Petitioner also contends that his due process rights were violated by his inability to review the transcript of the aborted trial proceedings after plea counsel abandoned the direct appeal and by PCR counsel's and PCR appellate counsel's failure to preserve his substantial issues. ECF No. 26-2 at 5-10 (Response pp. 203-08).

### b. Discussion

The record shows that the PCR's court's rejection of Petitioner's claim that plea counsel was ineffective in connection with Petitioner's direct appeal was reasonable and that habeas relief is not required under this Ground. Initially, Petitioner's claim that plea counsel was ineffective because he did not utilize the procedure for withdrawal of appellate counsel established under *Anders v. California*, 386 U.S. 738 (1967) is unavailing because those procedures are available only to appointed appellate counsel and not to retained counsel. *See McCoy v. Court of Appeals of Wisc., Dist. 1*, 486 U.S. 429, 436-37 (1988); *People v. Placencia*, 11 Cal. Rptr. 2d 727, 29-30 (Cal. Ct. App. 1992) (retained counsel not required to follow *Anders* procedures); *Johnson v. State*, 885 S.W.2d 641, 645 (Tex. App. 1994) (the procedural safeguards of *Anders* do not apply to retained counsel). Additionally, the record does not support Petitioner's claim that plea counsel represented him ineffectively because the plea transcript shows that he specifically waived any rights to contest previous trial-related evidentiary rulings by entering the *Alford* plea and none of those issues that he now asserts were "substantial" were preserved for review by contemporaneous objection during the plea hearing. Therefore, as a South Carolina licensed attorney, plea counsel was both ethically and procedurally obligated to truthfully inform the appellate court that there were no reviewable direct-appeal claims and he

could not be found ineffective for doing so. *See State v. Johnson*, 476 S.E.2d 681, 682 (1996) (finding issue not preserved for review when appellant made no contemporaneous objection at trial to the testimony claimed to be erroneously admitted and did not raise the issue at any point during trial); *State v. McKinney*, 292 S.E.2d 598, 599 (S.C. 1982) ("Absent timely objection at a plea proceeding, the unknowing and involuntary nature of a guilty plea can only be attacked through the more appropriate channel of Post-Conviction Relief."); *State v. Varvil*, 526 S.E.2d 248, 250 (S.C. Ct. App. 2000) (finding that constitutional arguments not raised to the trial court were not preserved for appellate review and were deemed waived on appeal); *see also* SCRAP 203(d)(1)(B)(iv) ((when appeal is from a guilty plea, notice must have attached "a written explanation showing that there is an issue which can be reviewed on appeal"); *see also* South Carolina Rule of Civil Procedure 11 ("If a pleading, motion, or other paper is signed in violation of this Rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction . . . ."); *Link v. School Dist. of Pickens Cnty.*, 393 S.E.2d 176, 179 (S.C. 1990) (an attorney may be sanctioned for filing a frivolous pleading, motion, or other paper, or for making frivolous arguments). Furthermore, the Fourth Circuit has held that "[t]he range of reasonable professional assistance is just as wide on direct appeal as it is at trial. In particular, '[c]ounsel is not obligated to assert all nonfrivolous issues on appeal,' as '[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'" *United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013) (quoting *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) and *Jones v. Barnes*, 463 U.S. 745, 752 (1983)). Finally, Petitioner's claims that the PCR court committed error by not ordering the State to produce a transcript of the aborted trial proceedings and that PCR counsel and PCR appellate counsel were ineffective for not obtaining the transcript or preserving the issue for appellate review are not properly considered under §

2254. *See McCrea v. Stevenson*, No. 2:11-cv-00045-RBH, 2011 WL 6692241, at *1 (D.S.C. Dec. 22, 2011). Thus, Petitioner has not shown that the PCR court's rejection of his claim of ineffective assistance in the direct appeal was unreasonable. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Seven.

8.    Ground Eight (restated): Petitioner's due process rights were violated because he was denied counsel and a witness-confrontation process at the preliminary hearing

a.    The Parties' Contentions

Respondent contends that this Ground fails to state a valid claim for habeas relief because Petitioner's voluntary *Alford* plea waived any constitutional violations that might have occurred in the state criminal process before the plea was entered. ECF No. 21 at 25. Respondent also contends that Petitioner cannot assert "infirmities in a state post-conviction action" in a federal habeas action. *Id*. Petitioner contends that he was unconstitutionally denied legal counsel and his right to confront the witnesses against him at his preliminary hearing and that he also was unconstitutionally denied a transcript of the proceeding. ECF No. 26-2 at 10-12 (Response p. 210-12). Petitioner asserts that he was "rebuked" by the presiding judge when he requested counsel, *id*. at 16 (Response p. 214), and that he was prejudiced by the lack of counsel because he was unable to produce Ms. Foster to testify for him, which "forced into unknowing, unintelligent, involuntary guilty plea." *Id*. at 19 (Response p. 217). Petitioner also asserts that his constitutional rights were violated when the State failed to disclose the identity of the informant "earlier in the pretrial process." *Id*. at 23 (Response p. 221).

b.    Discussion

Although a large portion of Petitioner's argument on this Ground consists of his rehashing of his Ground Two claims of ineffective assistance of counsel/involuntary plea

64

regarding his desire to have the Foster statement admitted into evidence at the pretrial level, the undersigned has already determined that the PCR court reasonably rejected those claims. As stated in that discussion, the record shows Petitioner failed to show that plea counsel was ineffective in his investigation and handling of the Foster statement or that his professional performance rendered Petitioner's *Alford* plea involuntary or unknowing. Thus, under applicable law, the voluntary *Alford* plea waived any prior constitutional error in the state court proceedings and prevents this court from considering such claims under § 2254. *See, e.g., Mabry v. Johnson,* 467 U.S. at 508; *Tollett v. Henderson,* 411 U.S. at 266; *United States v. Wiggins,* 905 F.2d at 52. Nevertheless, Petitioner's claims that his Sixth Amendment rights were violated when he appeared at his preliminary hearing without legal counsel are not valid because it is established that the Sixth Amendment does not guarantee an accused the assistance of counsel at a probable cause hearing. *Gerstein v. Pugh,* 420 U.S. 103, 111 (1975). In South Carolina, preliminary hearings are limited to probable cause determinations under South Carolina Rule of Criminal Procedure 2(a), (c), and, therefore, Petitioner had no federal constitutional right to legal representation. *Pearson v. Harrison,* 9 F. App'x 85, 87 (4th Cir. 2001); *see also Straws v. Stevenson,* No. 5:13-cv-3484-BHH-KDW, 2014 WL 8433190, at *22 (Dec. 17, 2014), *report and recommendation adopted,* 2015 WL 1519826 (D.S.C. Mar. 31, 2015), *appeal dismissed,* 615 F. App'x 168 (4th Cir. 2015). Furthermore, as previously stated throughout this Report, to the extent that Petitioner's contentions regarding his inability to obtain a transcript of the pretrial proceedings are based on claim of PCR court error or PCR counsel ineffectiveness, they do not provide any basis for federal habeas relief. The PCR court's rejection of the claims underlying this Ground was reasonable and not contrary to established federal law. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Eight.

9.     Ground Nine (restated): Petitioner's due

process rights were violated because counsel was ineffective for failing to file for a speedy trial

a.     The Parties' Contentions

Respondent contends that this Ground was waived by Petitioner's entry of the voluntary *Alford* plea. ECF No. 21 at 25. Petitioner responds that he was prejudiced in his ability to defend himself by being detained on an unreasonable bond for "nearly two years." ECF No. 26-2 at 29 (Response p. 227). Petitioner asserts that plea counsel was ineffective because he did not try to have the pending charges dismissed based on this violation of his right to a speedy trial and did not preserve and present this claim for appellate review. *Id.* at 29-32 (Response pp. 227-30).

b.     Discussion

Review of the record supports the court's decision because Petitioner did not discuss his speedy-trial claims in his PCR testimony and neither PCR counsel nor the State's attorney elicited any testimony from plea counsel on this point. Additionally, although he argues that plea counsel failed to present adequate argument in pretrial proceedings to raise and preserve a speedy-trial violation claim for appellate review, Petitioner did not produce a transcript of such proceedings or any other competent evidence to support those allegations at the PCR hearing. While he attempts to excuse this failure of proof by claims of lower court error, his voluntary *Alford* plea waived any right for him to assert pre-plea/trial court error as a basis for federal habeas relief, s*ee, e.g.*, *Mabry v. Johnson,* 467 U.S. at 508; *Tollett v. Henderson,* 411 U.S. at 266; *United States v. Wiggins,* 905 F.2d at 52, and PCR court error or PCR counsel ineffectiveness are not plausible § 2254 claims. *See* § 2254(i). Moreover, Petitioner's allegations that he received ineffective assistance of appellate counsel in connection with his direct appeal have already been discussed in this Report and found unsupported and unavailing. Petitioner has not shown that his *Alford* plea was involuntary or that plea counsel was ineffective in his pretrial

66

representation, and he waived any arguable speedy-trial violation when he entered his plea. The PCR court's rejection of the claims underlying this Ground was reasonable and not contrary to established federal law. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Nine.

        10.    Ground Ten (restated): Petitioner's due process rights were violated because counsel was ineffective for failing to investigate a new rule of law that has been made retroactive under the Constitution

        a.    The Parties' Contentions

Respondent contends that the PCR court's rejection of the claims underlying this Ground was reasonable because the "new rule of law" that Petitioner urges plea counsel should have investigated applies only to federal drug-related sentences and not to Petitioner's state sentence. ECF No. 21 at 26. Petitioner responds that the "Fair Sentencing Act" applied to his case because he was "sentence to twenty (20) years under the 100 to 1 sentencing guidelines on 4/14/11," which was after the effective date of the Act,[15] and that plea counsel was ineffective for failing to to argue the Act's applicability to obtain a lower sentence. ECF No. 26-2 at 34 (Response p. 231). Petitioner asserts that his sentence is excessive under the Act and that he should receive a "sentencing adjustment." *Id.* at 37 (Response p. 234).

        b.    Discussion

Petitioner cites only federal case law in support of this Ground. He does not cite to any South Carolina case that applies the federal Fair Sentencing Act to South Carolina state

---

[15] Petitioner does not provide a legal citation to the Act; however, the Fourth Circuit has cited it as "Fair Sentencing Act of 2010, Pub. L. No. 111–220, 124 Stat. 2372." *United States v. Allen*, 716 F.3d 98, 101 (4th Cir. 2013). The United States Supreme Court has cited it as "Fair Sentencing Act, 124 Stat. 2372." *Dorsey v. United States*, 132 S. Ct. 2321, 2326 (2012).

sentences and independent legal research does not disclose any such case. The United States Supreme Court has made it clear that the Act that Petitioner relies on is a federal law that applies only to federal sentences. *Dorsey v. United States*, 132 S. Ct. at 2326 (Fair Sentencing Act was enacted to "reduce the crack-to-powder disparity" previously found in "*[f]ederal* statutes [that] impose mandatory minimum sentences upon those convicted of *federal* drug crimes") (emphasis added). As previously stated in connection with his Ground Four, Petitioner's reliance on federal authority interpreting federal statutes to challenge his state convictions or sentences is misplaced. Because the federal law that Petitioner relies on for this Ground was not applicable to his state sentence, he cannot show here and did not show in the PCR court that plea counsel was ineffective for not relying on the Fair Sentencing Act to challenge or seek to reduce the 20-year negotiated sentence that Petitioner received under his voluntary plea. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Ten.

Finally, because the undersigned recommends that the district court reject each of Petitioner's habeas Grounds, it should also reject his concluding claim that he has shown "cumulative prejudice" in this case. ECF No. 26-2 at 39 (Response page 236).

IV.     Conclusion

The undersigned has considered each of Petitioner's Grounds for habeas relief and recommends that each be dismissed. It is recommended that Respondent's Motion for Summary

Judgment, ECF No. 20, be GRANTED and that the Petition in this case be DISMISSED with prejudice.

      IT IS SO RECOMMENDED.

January 27, 2016                               Kaymani D. West
Florence, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).